**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

June 22, 2001

**Before**

Hon. FRANK H. EASTERBROOK, *Circuit Judge*

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. ILANA D. ROVNER, *Circuit Judge*

Nos. 99-2962, 99-3588 & 99-3781

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     *Plaintiff-Appellee*, <br><br>   *v.* <br><br> LARRY E. STOTT, JR., ROBERT A. GAUGHAN, a/k/a BOB, and LONNIE M. FORD, a/k/a LONNIE, <br>     *Defendants-Appellants*. | Appeals from the United States District Court for the Northern District of Indiana, Hammond Division. <br><br> No. 97 CR 198 <br><br> James T. Moody, <br> *Judge*. |

**O R D E R**

Upon consideration of Mr. Ford's petition for rehearing, the Government's response, and Mr. Ford's reply thereto, this court grants the petition for rehearing and substitutes the following language for section B.2.(c) of the original opinion found at page 41 of the slip:

Finally, Mr. Ford submits, also by motion filed after oral argument, that Apprendi renders his sentence invalid for two reasons. First, Mr. Ford focuses on the amount of

drugs allegedly involved. He argues that the statutory maximum sentence for possession of cocaine, without reference to quantity, is twenty years. Because the jury did not find him guilty of possessing a specific amount of cocaine, Apprendi dictates that his sentence be limited to twenty years. In his second argument, Mr. Ford turns to the type of drugs for which he should be held accountable. According to Mr. Ford, the Government did not come forward with evidence that his dealings included cocaine base, for purposes of 21 U.S.C. § 841(b) and the Sentencing Guidelines, and therefore his sentence cannot be justified as an enhanced penalty for possession of "crack" as opposed to merely "powder" cocaine. We address each of Mr. Ford's argument below.

As an initial matter, however, Mr. Ford failed to raise any Apprendi-type argument in the district court. Consequently, we review Mr. Ford's Apprendi challenge only for plain error. See United States v. Nance, 236 F.3d 820, 824 (7th Cir. 2000), petition for cert. filed, (U.S. Apr. 24, 2001) (No. 00-9633). In order to establish plain error, Mr. Ford must show that (1) there was error; (2) the error was plain; (3) the error affected his substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. See id. (quoting Johnson v. United States, 520 U.S. 461, 466-67 (1997)).

The government concedes that Mr. Ford has established at least some elements of the plain error test. It, however, maintains that Mr. Ford cannot show that the error affected the fairness, integrity, or public reputation of the judicial proceedings because there was overwhelming evidence establishing the amount of crack cocaine involved in

Count II.  We agree.

When applying the "fairness" prong of the plain error standard to Apprendi cases, "we ask whether it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error."  United States v. Robinson, 250 F.3d 527, 530 (7th Cir. 2001) (internal quotation marks and citations omitted).  In the circumstances presented here, we believe that it is clear beyond a reasonable doubt that a properly instructed jury would have found Mr. Ford guilty of possessing 50 or more grams of cocaine base thereby qualifying Mr. Ford for a life sentence pursuant to 21 U.S.C. 841(b)(1)(A)(iii).

With respect to Count II of the indictment, the jury was instructed that "on or about December 8, 1997, . . . Lonnie M. Ford did knowingly and intentionally possess with intent to distribute in excess of fifty grams of cocaine base."  R.295, Inst. 12.  As the government explains, "Count 2 was based on the 403 grams of crack cocaine Bonner was transporting when he was stopped by law enforcement officers" on December 8, 1997.  Rehearing Ans. at 6.  Mr. Ford did not contest the quantity (403 grams) of the drugs seized.  Consequently, because Count II was based on a single transaction of an undisputed amount of cocaine base, the jury could not have convicted Mr. Ford on Count II without finding that 403 grams of some type of cocaine was involved.

With respect to the drug type, Mr. Ford maintains that the Government cannot establish beyond a reasonable doubt that the cocaine seized from Mr. Bonner was "cocaine base" for purposes of the Sentencing Guidelines and 21 U.S.C. § 841.

Consequently, even if the amount is undisputed, he still must be resentenced based on the type of drug involved.

"Cocaine base," as defined by the Sentencing Guidelines, means "'crack.' 'Crack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appears in a lumpy, rocklike form." USSG § 2D1.1(c) note (D).[1] Mr. Ford points to the chemist's report in the present case, that fails to identify the presence of sodium bicarbonate, as evidence that the cocaine involved was not "crack." We believe that Mr. Ford takes an overly narrow view of the information provided by the chemist. The report was part of Stipulation Number 1; it stated:

> The Government and the Defendant stipulate as follows. One if DEA forensic chemist Lionel Tucker were called to testify, his testimony will be consistent with the results listed in lab report attached hereto, which reflect the lab analysis of Government's exhibit Number 1, Number 2, and Number 3. In addition, Mr. Tucker would testify that exhibit Number 1, cocaine base, is commonly known as crack cocaine.

Tr. 249 (emphasis added).[2] Viewed in its entirety, therefore, the stipulation concerning the chemist's testimony clearly characterizes the cocaine base in Count II as "crack."

In addition, the presence or absence of sodium bicarbonate is not dispositive of

---

[1] Congress employed the same meaning of cocaine base, that is "crack," when enacting the enhanced penalty provisions for cocaine base found in 21 U.S.C. § 841. See United States v. Booker, 70 F.3d 488, 494 (7th Cir. 1995).

[2] Furthermore, there does not appear, on the face of the report, a place to list sodium bicarbonate even if it were present. The format of the report requires the chemist to identify the "Active Drug Ingredient." Tr. 249 Stip. 1. Because sodium bicarbonate is not part of the "active drug ingredient" of crack cocaine, its absence is altogether reasonable. Id.

whether a substance is crack under the Guidelines. As noted by the Tenth Circuit in United States v. Brooks, 161 F.3d 1240 (10th Cir. 1998), the qualifier "usually" in the phrase "usually prepared . . . with sodium bicarbonate" is "an acknowledgment that other methods of crack preparation exist and that not all forms of 'cocaine base' need contain sodium bicarbonate to qualify as crack for sentencing purposes." Id. at 1248. Consequently, it is not essential that a lab report indicate the presence of sodium bicarbonate before the enhanced penalties are applied.

According to the testimony at trial, we do not see how the substance taken from Bonner could be anything other than "crack" cocaine as used in the statute.[3] The evidence established that the substance contained cocaine base, that Bonner had "cooked" the cocaine into crack, Tr. 311; that the chemist characterized the substance as "crack," Tr. 249 Stip. 1; and that the substance was characterized by all who saw it as a "rock-like," Tr. 242, 249 Stip. 1. Consequently, we believe it is clear beyond a reasonable doubt that a rational jury would find that the substance involved in Count II was crack as defined in the statute and the Guidelines. Any Apprendi error, therefore, did not seriously affect the fairness, integrity or public reputation of the judicial proceedings, and the plain error standard has not been met. See U.S. v. Mietus, 237

---

[3] Mr. Ford also places some emphasis on letters written by Bonner to Mr. Ford while Mr. Ford was awaiting sentencing. According to Bonner, these letters were meant to help Mr. Ford escape the enhanced penalty provisions by characterizing the drugs taken from Bonner as something other than crack. As Bonner explained on the stand, the letters, written under very dubious circumstances, were based on an incorrect understanding of the definition of crack. On the stand, Bonner stated, both at trial and at sentencing, that he "cooked" the cocaine into crack.

F.3d 866, 875 (7th Cir. 2001) (finding no plain error when jury would have found at least 50 kilograms of marijuana had it been properly instructed and therefor finding no plain error).

In all other respects, the petition for rehearing is denied. The judgment of the district court is affirmed.

AFFIRMED