> NONPRECEDENTIAL DISPOSITION
> To be cited only in accordance with
> FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued April 23, 2008
Decided May 29, 2008

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

JOHN L. COFFEY, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 07-3135

| | |
|---|---|
| UNITED STATES of AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 07-CR-36 |
| THOMAS HERNKE, *Defendant-Appellant*. | Charles N. Clevert, Jr., *Judge*. |

**ORDER**

Thomas Hernke pleaded guilty to possessing cocaine with intent to distribute.  *See* 21 U.S.C. § 841(a)(1).  The district court imposed a below-guidelines sentence of 24 months' imprisonment because Hernke had helped prosecutors convict his cohorts in the offense. On appeal Hernke challenges the district court's assessment of a two-level increase in his offense level for possession of firearms.

Throughout 2005 and 2006 government agents investigated Jeffrey Galaska, whom they suspected of being a large-scale cocaine distributor.  In the course of that investigation,

agents learned from two confidential informants that Galaska delivered cocaine to Hernke at his residence on a weekly basis. The informants' tip was corroborated by data obtained from global positioning devices installed on Galaska's vehicles that established that Galaska did indeed visit Hernke on a weekly basis.

Agents obtained a search warrant for Hernke's residence in March 2006 and, in the process of executing it, discovered Hernke seated at the kitchen table, "cutting" cocaine with Inositol and filling "bindles" (paper packets) with cocaine for resale. Agents seized over two ounces of cocaine, bags for packaging cocaine, a digital scale, a grinder, drug notes, a bowl and spoon with cocaine residue, a two-ounce bottle of Inositol, and straws. Agents also discovered two firearms—a .357 revolver and a .44 magnum revolver—under Hernke's bed. In addition to the guns, the agents found 1.5 ounces of cocaine, bindles, and drug notes in that same bedroom. After his arrest Hernke admitted that he purchased two to four ounces of cocaine from Galaska on more than twenty occasions (accounting for the conservative estimate that Hernke received at least 500 grams of cocaine).

Hernke admitted all of these facts in connection with his guilty plea, and based on this account, the probation officer calculated a total offense level of 25, resulting in a guidelines recommended sentence of 57 to 71 months' imprisonment. This calculation included a two-level upward adjustment for possession of a dangerous weapon, *see* U.S.S.G. § 2D1.1(b)(1), and a three-level downward adjustment for acceptance of responsibility, *see id.* § 3E1.1. The government also filed a motion asking the court to impose a prison sentence 40% below the low end of the guidelines range, *see* U.S.S.G. § 5K1.1, due to Hernke's substantial assistance in the investigation and prosecution of Galaska and his associates.

Hernke objected to the inclusion of the two-level firearm increase, arguing that he used the revolvers only for target practice and never in connection with his drug crimes. The district court disagreed and ruled that the weapons' proximity to the drugs and drug paraphernalia made the upward adjustment appropriate. Despite this adverse finding, the district court sentenced Hernke to 24 months, a term almost 60% below the low end of the recommended range.

On appeal Hernke challenges only the firearm adjustment. The guidelines impose a two-level increase for possessing a firearm in connection with a drug crime due to the "increased danger of violence when drug traffickers possess weapons." *See* U.S.S.G. § 2D1.1(b)(1) & cmt. n.3. For the increase to apply the government must prove, by a preponderance of the evidence, that the defendant possessed a firearm during the drug offense or relevant conduct. *See United States v. Olson*, 450 F.2d 655, 684 (7th Cir. 2006). Once the government makes that showing, the burden shifts to the defendant to prove that it was clearly improbable that the firearm was connected to the drug offense. *See id.* The

relationship between the firearm and the defendant's underlying offense is a factual determination that we review for clear error. *See United States v. Johnson*, 227 F.3d 807, 814 (7th Cir. 2000).

In the present case the government met its burden: the factual basis for Hernke's guilty plea clearly established that the firearms were in his possession during the commission of his drug offense. The district court relied on four cases from this circuit for the proposition that the firearm adjustment is appropriate even when the gun possession is entirely passive. *See United States v. Womack*, 496 F.3d 791, 797-98 (7th Cir. 2007); *Olson*, 450 F.2d at 684; *United States v. Berthiaume*, 233 F.3d 1000 (7th Cir. 2000); *Johnson*, 227 F.3d at 814-15. Hernke principally argues in this appeal that the adjustment was inappropriate because the district court relied on case law that is materially distinguishable from his own case. While Hernke identifies factual dissimilarities between his case and those cited by the district court, he does not explain why these distinctions are material. For example, Hernke points out that in *Womack*, 496 F.3d at 797, the defendant's gun was kept in the bedroom near approximately $16,000 in drug proceeds but that there was no money found in the vicinity of Hernke's two revolvers. But Hernke's case is even *stronger* than *Womack*: Hernke possessed two guns near cocaine, bindles, and drug notes—unambiguous evidence of ongoing drug trafficking.

Hernke correctly points out that *Johnson*, *Olson*, and *Berthiaume* were stronger cases for the upward adjustment than his. For example, in *Olson* there was evidence that the defendant himself participated in shootings, and in *Berthiaume* there was evidence that the defendant accepted guns as partial payment for drug debts. But the upward adjustment recognizes that the presence of weapons where drugs are stored, packaged and dealt is inherently dangerous, and Hernke offers no reason why it should not apply here. *Womack* is controlling, and thus there is no clear error in the district court's determination that the government met its initial burden. *See id.*; *see also United States v. Ocampo*, 472 F.3d 964, 966 (7th Cir. 2007) (holding that firearm adjustment was appropriate where guns were stored at home where drugs were distributed).

Once the government met its burden, the ball was in Hernke's court to show that it was clearly improbable that the two revolvers were connected to his drug offense. *See Olson*, 450 F.2d at 684. To do this, Hernke relied on his objections to the presentence report which asserted that his acquisition of one of the revolvers preceded his involvement in drug distribution, that he had them solely for target practice (though he had not even done that for some time) and that had never fired the .44. Hernke did not testify at his sentencing hearing, nor did he present any other evidence to support his claims. His objections to the presentence report also contended that evidence was lacking to show that drug transactions occurred in the bedroom, further noting that the guns were not loaded when found in an

unlocked case and that the ammunition was located in a drawer outside of the case. The district court properly found these representations, without additional evidence, insufficient to meet Hernke's burden in light of the weapons' proximity to the drugs and drug paraphernalia. *See United States v. Corral*, 324 F.3d 866, 873 (7th Cir. 2003) (holding that "guns found in close proximity to drug activity are presumptively connected to that activity"). It is handy for a drug dealer to have powerful firearms readily available in the location where he stores, packages and deals his product. The district judge was not persuaded by Hernke's proffer that the proximity of the firearms to his drug dealing activities was coincidental. We do not find this factual determination to be clearly erroneous.

Accordingly, we affirm.