In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3209

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

GARY STEVENSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 07 CR 30178—**William D. Stiehl**, *Judge.*

ARGUED MARCH 31, 2011—DECIDED SEPTEMBER 7, 2011

Before CUDAHY, POSNER, and MANION, *Circuit Judges.*

MANION, *Circuit Judge.* A jury convicted Gary Stevenson of one count of conspiracy to distribute and possess with intent to distribute cocaine and crack cocaine. The district court sentenced Stevenson to life imprisonment. Stevenson appeals, arguing that the district court erred in admitting evidence related to his distribution and use of marijuana and that the verdict is not supported by the evidence, but rather constitutes a variance from the indictment. We affirm.

## I.

In 2007, the Drug Enforcement Administration ("DEA") began investigating a crack and cocaine distribution ring operating out of St. Louis, Missouri. The investigation resulted in the eventual charge of defendant-appellant Gary Stevenson, in a fourth superseding indictment, with one count of conspiring to distribute and possess with the intent to distribute crack and cocaine. An initial indictment had charged Stevenson, Diallo Bohanna and Kimyata Young with one count of conspiracy to distribute and possess with intent to distribute cocaine and crack cocaine. A second, third, and fourth superseding indictment were later returned, adding as co-defendants Gloria Stevenson (Gary's mother), Shalonda Byrth, Herman Moore, Gregory Hogan, Dave Kent, Tony Friends, Jr., Pamela Stevenson (Gary's sister), Priscilla Hawkins, Nathaniel Lewis, Ernest Miller, Sr., Kenneth Talton and Jennifer Wilkins. All of the co-defendants pleaded guilty, with the exception of Gary Stevenson, Hogan, Moore, Talton, and Wilkins, who pleaded not guilty and proceeded to trial in the Southern District of Illinois. The trials were severed for all of the defendants, except for Hogan and Wilkins who were tried together. This appeal concerns only Gary Stevenson's trial.[1]

---

[1] Juries convicted Hogan, Moore, Talton and Wilkins, and they were sentenced, respectively, to life, 360 months', 160 months', and 121 months' imprisonment. All four appealed their convictions to this court. Prior to oral argument, the government confessed error, namely the failure to prove venue in the

(continued...)

At Stevenson's trial, in addition to government agents, Friends, Young, Byrth, Miller, Hawkins, Pamela Stevenson, Lewis, Bohanna, and Kent testified. Stevenson did not testify, nor did he call any witnesses in his defense. The government witnesses testified as follows:

Stevenson lived in St. Louis, Missouri and, on a weekly basis from 2003 to 2007 sold large quantities of crack cocaine to Miller and Kent, among others. At times, Miller and Kent would pay cash, and at other times, Stevenson would front them the crack and they would pay Stevenson later. Stevenson also sold large amounts of powder cocaine to Bohanna on a weekly basis from 2006 to 2007, again regularly fronting the drugs to Bohanna.

Beginning in 2006, Stevenson traveled to Kansas City, Missouri to purchase marijuana and cocaine from Tony Friends. Before leaving St. Louis, Stevenson or Moore would remove speakers from his automobile and hide money for the drug purchase inside the speakers, before

---

[1] (...continued)

Southern District of Illinois, to defendants Wilkins and Moore and their convictions were vacated. *See United States v. Wilkins*, No. 09-3457 (January 28, 2011); *United States v. Moore*, No. 09-3731 (January 28, 2011). Following oral argument, the government filed a motion to confess error to defendants Talton and Hogan, again on the basis of the lack of venue in the Southern District of Illinois. We granted that motion and their convictions were likewise vacated. *See United States v. Talton*, No. 09-2751 (April 28, 2011); *United States v. Hogan*, No. 09-3588 (April 28, 2011). Stevenson's appeal is the only one remaining before us.

reinstalling the speakers in a courier car. Then one of several women (Pamela Stevenson, Byrth, Wilkins, or a woman only identified at trial as "Sweet Pea") would proceed in the money-laden courier car to Kansas City. (Stevenson purposely enlisted women to act as couriers, believing that females were less likely to attract the attention of law enforcement.) Stevenson paid the couriers several hundred dollars per trip, although he never paid his sister Pamela. But, as Pamela testified at trial, she "was more like hook my man up with marijuana and I be cool." And Pamela indirectly benefitted by this arrangement because she and her boyfriend, Talton, resold the marijuana they received from Stevenson out of the residence they shared with Pamela's three children.

In addition to the women couriers, Stevenson also paid Lewis to drive a "trail car" during the round trips to Kansas City. As a trail car driver, Lewis was responsible for keeping in contact with the couriers en route and for watching out for any law enforcement presence. And if there were any problems, he was to contact Stevenson and inform him of the difficulties.

Sometimes, though, Stevenson himself would drive the trail car with a friend or a girlfriend. Kimyata Young testified that she went with Stevenson to Kansas City on one occasion, although she claimed she did not know the true purpose of the trip at first—she thought she was going shopping. In fact, when Young first met him, Stevenson told her that he was a police officer who worked for the Drug Task Unit. But she soon

learned the truth. Notwithstanding the fact that Young was well educated (she had a Master's degree and was a licensed clinical social worker) and gainfully employed (making in the mid-$30,000), she not only continued to associate with Stevenson, but also helped him by storing cocaine and marijuana at her home.

At trial, the couriers and trail-car drivers testified that when they arrived in Kansas City, they would go to Friends' home. There, they would back the courier car into Friends' garage and then wait for Stevenson and Friends, and sometimes help them, to remove the drug money from the speakers and replace it with cocaine and/or marijuana. Friends testified that he served as a middleman for the transaction and that the drugs were supplied by an individual from Mexico named Ramone. Ramone was also present on several occasions during the drug exchanges.

After packing the courier car with the drugs, the courier would return to St. Louis, with Stevenson or others following in the trail car. Most of the time when they arrived the courier car would be taken to the home of Stevenson's mother. There Stevenson, Moore, or Talton would remove the speaker box and bring it into the kitchen, where it would be unloaded. On a few occasions, Stevenson stored the cocaine at Young's home; Stevenson would later call Young and tell her to bring it to his mother's house. Once the cocaine was unloaded in the kitchen, Stevenson would either break the cocaine into smaller packages and resell it or cook it into crack and then sell the crack. Stevenson sold the cocaine and

crack to several regular customers, including, as noted above, Bohanna, Miller and Kent, oftentimes fronting the drugs to these individuals. The couriers and trail-car drivers often witnessed both the crack cooking and the cocaine and crack sales.

The DEA discovered Stevenson's drug operation through its investigation of Bohanna's East St. Louis, Illinois crack dealing. After conducting several controlled purchases of crack from Bohanna, the DEA arrested Bohanna in late August 2007. Following his arrest, Bohanna agreed to cooperate with the DEA and fingered Stevenson as his source. Bohanna also agreed to call Stevenson and arrange to purchase additional cocaine, which he did.

Unbeknownst to Stevenson, DEA agents were watching him the evening he was scheduled to meet Bohanna. After observing Stevenson enter Young's residence, officers directed Bohanna to call Stevenson and tell Stevenson that he was in the St. Louis area and ready to meet. In response to Bohanna's call, Stevenson told Bohanna to meet him in the area of Riverview and Broadway. Stevenson and Young then left Young's residence, with Stevenson carrying a small white bag. The duo originally headed toward the Riverview/Broadway area, but they never finished the trip; instead they turned around and headed back to Young's home. DEA agents then attempted to arrest Stevenson, but he drove off, leading agents on a high-speed chase. Stevenson evaded police and disappeared for several months. During Stevenson's months in hiding, he changed the

voicemail message on his cell phone directing callers to DTA (which in text-talk means "Don't Trust Anyone") and telling them to dump their telephones. Stevenson also left a message for one of the DEA agents, taunting him, as the agent explained at trial, by saying: "[t]hat it was my job to catch him and it was his job to run, bitch."

While Stevenson was on the run, the government gathered evidence. They immediately obtained a search warrant for Young's home and inside recovered a bowl of powder cocaine inside the refrigerator, three bags of crack cocaine underneath the kitchen sink, three scales in the kitchen, and two kilo wrappers in the kitchen trash. Agents also recovered a total of thirteen grams of crack cocaine and 231 grams of powder cocaine. Agents also interviewed friends and associates of Stevenson and obtained statements from several who agreed to cooperate with the government. Stevenson was eventually arrested in early 2008.

Based on the above evidence, a jury convicted Stevenson of conspiracy to distribute and possess with intent to distribute cocaine and crack cocaine. Stevenson appeals.

II.

On appeal, Stevenson presents two arguments. First, he argues that the district court erred in admitting evidence related to his distribution and use of marijuana. Second, Stevenson contends that the evidence does not support a verdict for the conspiracy charge—but rather

the proof at trial constitutes a variance from the indict-
ment.[2]

---

[2] Stevenson does not challenge venue, which as noted above
served as the basis for the government's confession of error in
Moore's, Wilkins', Talton's and Hogan's cases. Stevenson's
trial, which was the first of four, differed significantly from
those for the co-conspirators. In Stevenson's trial the govern-
ment called Bohanna as a witness and he provided the neces-
sary link to the Southern District of Illinois, testifying that
Stevenson fronted him crack cocaine (thus making him a
member of the conspiracy, *see United States v. Stott,* 245 F.3d 890,
903 (7th Cir. 2001), amended on rehearing in part, 15 Fed.Appx.
355), which Bohanna then sold in East St. Louis, Illinois (thus
making venue proper in the Southern District of Illinois. *See
United States v. Ochoa*, 229 F.3d 631, 636-37 (7th Cir. 2000)).
Bohanna was not called to testify in Moore's, Wilkins', Talton's
or Hogan's cases, although it is unclear why not. During the
opening statement at Stevenson's trial, the prosecutor stated
that "Diallo Bohanna is going to tell you in 2006, 2007 he
would purchase multiple ounces of cocaine from the
Defendant practically weekly. What Diallo Bohanna would
do is he would come in this District, this side of the river in
Illinois, typically from East St. Louis, drive to St. Louis, and pick
up his cocaine from the Defendant, bring it back to this
District, turn it into crack, and sell it to his customers for
profit. The reason that's important is that's why this case has
been indicted in this District, even though most of it takes
place in St. Louis. Diallo Bohanna is the link. He's the reason
this case has been indicted here in this courtroom today."
Bohanna's testimony established proper venue for Stevenson's
trial. The record does not show why he did not testify at the
trials of the other accused co-conspirators.

## A. Marijuana Evidence

Throughout Stevenson's three-day trial, the government elicited testimony from several witnesses that Stevenson had distributed and used marijuana. Stevenson argues on appeal that this testimony was "bad acts" evidence and was inadmissible under Rule 404(b).

Rule 404(b) provides that evidence of a defendant's prior bad acts is inadmissible character evidence, but may be admitted to prove the defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, . . . ." Fed. R. Evid. 404(b). In its brief on appeal, the government does not assert a valid purpose for the marijuana evidence, but instead argues that Stevenson did not preserve the issue because his only objection to the marijuana evidence was based on relevancy and not Rule 404(b), and therefore our review is solely for plain error. Stevenson counters that his objection was sufficient to put the government and the court on notice that he was complaining about the admission of "bad acts" evidence. Alternatively, Stevenson claims that this court should nonetheless review his Rule 404(b) challenge for an abuse of discretion because the prosecution violated Rule 404(b) by not providing his attorney with the requisite notice of its intent to introduce such evidence. *See* Fed. R. Evid. 404(b) ("[U]pon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice of good cause shown, of the general nature of any such evidence it intends to introduce at trial.").

Whether Stevenson preserved the issue and whether the government's violation of Fed. R. Evid. 404(b)'s notice requirement should excuse an insufficient objection to the marijuana evidence, however, is irrelevant because any error was harmless.[3] *See* Fed. R. Crim. P. 52(a); *United States v. Ortiz,* 474 F.3d 976, 982 (7th Cir. 2007) ("Errors do not merit reversal when the government proves that they are harmless, that is, that they did not affect the outcome of the trial."). The evidence against Stevenson was overwhelming. Stevenson's supplier, Friends, testified at trial that he supplied Stevenson with huge quantities of cocaine over the years. Several couriers and trail-car drivers also testified, not just about their roles, but also about events they witnessed—Stevenson secreting the money and drugs in the speaker boxes; his cooking of the cocaine into crack; and his weighing, packaging, and selling large quantities of crack and cocaine out of his mother's house. Additionally, three of Stevenson's regular purchasers, to whom Stevenson fronted the drugs, also testified. Testimony from government agents concerning Stevenson's behavior also bolsters the testimony of the co-conspirators. Specifically, Stevenson led officers on a high-speed chase the evening of the attempted sting operation. After eluding officers, he then taunted them, leaving messages evidencing an

---

[3] On appeal, Stevenson also argues that the marijuana evidence "was far more prejudicial than probative under Fed.R.Evid. 403," Appellant Brief at 33, but Stevenson did not present that argument to the district court and even had he, as noted, any error was harmless.

awareness of guilt, i.e., it's my job to run and your job to catch me. Stevenson also changed his voicemail message to inform his friends and family members that there was a "snitch" and that they should dump their cell phones and trust no one. For his part, Stevenson called no witnesses and presented no evidence.

Moreover, the references to marijuana, for the most part, were merely repetitive of the references to the charged crack and cocaine—e.g., Stevenson "would come from St. Louis and buy kilograms of cocaine and pounds of marijuana from me." In fact, Stevenson argues on appeal that there was no reason for the additional marijuana evidence to be admitted because it was "entirely cumulative" and that "of the 32 pages of trial testimony where marijuana evidence appears, 27 include the same or substantially similar testimony with respect to cocaine or crack." Appellant Brief at 30. But rather than bolster Stevenson's argument, this redundancy highlights why any error was harmless. It is also wrong to think that a jury would hear the same witnesses testify about marijuana and cocaine and crack and conclude that those witnesses must be truthful regarding the cocaine and crack because they also said that Stevenson had distributed or used marijuana. *See United States v. Persico*, 425 F.2d 1375, 1384 (2d Cir. 1970) ("As the trial judge noted, [the witness'] testimony as to other crimes and criminal propensity was so closely bound up with his directly relevant testimony with regard to the [charged] hijacking that unless the jury believed the relevant testimony it is quite unlikely that it would have been influenced by the accompanying testimony

of other crimes.”). For all of these reasons, we conclude that any error related to the admission of testimony concerning marijuana was harmless.

B.  Variance

Stevenson next challenges his conspiracy conviction, styling his challenge as a fatal variance between the government's indictment and its proof at trial. A conspiracy variance claim is treated as a sufficiency of the evidence claim, *United States v. Womack*, 496 F.3d 791, 794 (7th Cir. 2007), which normally means that this court reviews the evidence in the light most favorable to the government. But in this case, because Stevenson did not raise the issue in the district court, our review is for plain error. *Id.* Under this exacting standard, reversal is warranted "only if the record is devoid of evidence pointing to guilt, or if the evidence on a key element was so tenuous that a conviction would be shocking. *United States v. Irby*, 558 F.3d 651, 653 (7th Cir. 2009) (internal quotations omitted).

In arguing that the evidence was insufficient to support the charged conspiracy, Stevenson claims "[i]n short, the government failed to prove that Mr. Stevenson conspired with numerous of the other purported co-conspirators charged in the indictment." Appellant's Brief at 42. Stevenson's argument fails as a legal matter. Legally, "[t]o convict a defendant of conspiracy, the government must prove that (1) two or more people agreed to commit an unlawful act, and (2) the defendant knowingly and intentionally joined the agreement." *United*

*States v. Johnson*, 592 F.3d 749, 754 (7th Cir. 2010). But "the government doesn't have to prove with whom a defendant conspired; it need only prove that the defendant joined the agreement alleged, not the group." *United States v. Townsend*, 924 F.2d 1385, 1389-90 (7th Cir. 1991). Thus, "to overturn a conspiracy conviction on the ground of variance, an appellant must show both that he did not conspire with each defendant *and* that he was prejudiced by being tried with defendants who were not his coconspirators." *Id.* at 1390. In this case, Stevenson merely claims that the government did not show that he conspired with five of the fourteen individuals named in the indictment. Legally, though, the government was not required to prove their participation, *id.*, and therefore Stevenson's argument is without merit.

In his reply brief, Stevenson claims a variance based on a different ground: he no longer claims that the problem with the evidence is that the government did not establish the participation of all the alleged co-conspirators. Rather, Stevenson argues in his reply brief that "the government offered insufficient evidence at trial that Mr. Stevenson engaged in a conspiracy to possess and distribute *both* crack *and* cocaine as charged in the indictment." Appellant's Reply Brief at 19. Stevenson then claims that "[t]he testimony of Messrs. Miller and Kent showed, at most, individual buy-sell transactions with Mr. Stevenson involving crack." Appellant's Reply Brief at 21. Arguments not presented until a reply brief are waived. *See United States v. Boisture*, 563 F.3d 295, 299 n.3 (7th Cir. 2009). But even if Stevenson had not waived this argument, it would fail.

As noted above, the government presented evidence that Stevenson fronted crack to Miller and Kent and this alone would be sufficient to make the duo part of the conspiracy and support the verdict that Stevenson conspired to distribute crack. *See Stott,* 245 F.3d at 903. But in addition to this evidence, several of the other co-conspirators testified that after Stevenson purchased cocaine from Friends, they helped him transport it back to his mother's house, where they observed him cook the cocaine into crack and then sell both cocaine and crack to various purchasers. This evidence was sufficient to establish Stevenson's conspiracy to deal in both crack and cocaine. Accordingly, the additional theory presented in Stevenson's reply brief fares no better than his initial argument. And the jury's verdict stands.

### III.

The evidence of Stevenson's guilt was overwhelming. Numerous members of the conspiracy, serving in all roles—supplier, courier, trail-car driver, and purchaser—testified at length about the scope and operations of the conspiracy. Given this overwhelming evidence, any error in admitting evidence related to marijuana was harmless. Moreover, the overwhelming evidence established the conspiracy charged in the indictment—conspiracy to distribute and possess with intent to distribute cocaine and crack cocaine. There was no variance. We AFFIRM.