In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2483

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

WILLIAM THOMAS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 CR 832 — **Amy J. St. Eve**, *Judge.*

ARGUED MAY 24, 2016 — DECIDED AUGUST 29, 2016

Before WOOD, *Chief Judge*, and EASTERBROOK and KANNE,
*Circuit Judges*.

WOOD, *Chief Judge*. William Thomas pleaded guilty to all
charges of a three-count indictment: being a felon in
possession of a firearm, 18 U.S.C. § 922(g)(1); possession of
heroin with intent to distribute, 21 U.S.C. § 841(a)(1); and
possession of a firearm in furtherance of a drug trafficking
crime, 18 U.S.C. § 924(c). He reserved the right, however, to
appeal the district court's refusal to suppress the gun and

heroin that prompted his indictment. See FED. R. CRIM. P.
11(a)(2). He has now done so. He relies principally on *Brady v.
Maryland*, 373 U.S. 83 (1963), contending that the government
violated his due process rights by refusing to turn over
information about the confidential informant whose
testimony formed the basis for the search warrant on which
the police relied. Even if *Brady* applies to pretrial motions to
suppress, Thomas cannot prevail. The warrant was supported
by probable cause, and thus the information he seeks is not
material. We therefore affirm the district court's judgment.

**I**

On June 4, 2013, officers from the Chicago Police Depart-
ment executed a search warrant at the basement apartment of
905 North Kedvale Avenue, in the Humboldt Park neighbor-
hood of Chicago. The search revealed a nine-millimeter Glock
semi-automatic pistol loaded with ten rounds of ammunition,
a "BB" gun pistol, a plastic baggie containing roughly 17
grams of heroin, and a digital scale. The officers also discov-
ered documents in Thomas's name. Thomas was arrested and
indicted on October 17, 2013, on the charges mentioned
above.

Thomas promptly moved to suppress the evidence seized
during the search. He argued that the warrant authorizing the
search was deficient on its face because it was supported by a
confidential informant "of unknown background and un-
known reliability." According to Thomas, the issuing judge
did not know whether the informant

> was under arrest at the time of his statements,
> whether information was exchanged for favora-
> ble treatment, whether he was a paid informant,

> how he knew [defendant], whether he used aliases, whether he was a rival gang member, whether he was on probation at the time, his criminal history, and his track record as an informant.

Thomas argued that these purported holes in the record vitiated the issuing judge's finding of probable cause. He also contended that the officer proffering the probable-cause affidavit acted with reckless disregard for the truth, and that the good-faith exception should therefore not apply. He requested an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978).

The warrant supporting the search of Thomas's apartment was based on an affidavit signed by Chicago Police Detective Gregory Jacobson. Jacobson's affidavit summarized information provided by a confidential informant. It stated that the informant told Jacobson that he or she had visited the basement apartment of a man nicknamed "Burpy" on May 23, 2013. The informant gave a detailed physical description of Burpy, the approximate location of Burpy's apartment, and identified Burpy as a member of the "Four Corner Hustler" gang. While Burpy and the informant were in Thomas's apartment discussing recent gang conflicts, Burpy took two .40-caliber handguns out of the pockets of some clothing hanging on a rack inside the apartment: one was a blue steel pistol, and another a smaller blue and gray steel "baby" model. Holding the pistols, Burpy said, "I am ready for any of those niggas [*sic*] who try and take what's mine." He then returned the firearms to the pockets of the clothing on the rack. The informant,

who told Jacobson that he or she was experienced with fire-arms, stated that the ones Burpy had handled were real and noted that both had magazines inserted.

In order to identify Burpy and corroborate the informant's information, the affidavit said, Jacobson queried a law en-forcement database for a Burpy living near the location iden-tified by the informant. He showed the informant several po-lice photographs, including one of Thomas. The informant positively identified Thomas as Burpy. Jacobson then re-viewed Thomas's criminal history, which included a felony conviction for aggravated vehicular hijacking. He noted that several arrest reports listed Thomas's nickname as "Burpy" or "Burpee." He later drove the informant to the area where he or she had described the conversation as having taken place. The informant identified 904 North Kedvale Avenue as the building where Burpy's basement apartment was located. This address matched Thomas's most recent arrest report.

Eleven days after their first meeting, Jacobson and the in-formant appeared before Cook County Circuit Judge Sandra G. Ramos. The informant swore to the contents of the affida-vit, and the judge was told about the informant's detailed criminal history and the circumstances under which the in-formant came to cooperate with law enforcement. Judge Ra-mos found probable cause for a search of Thomas's residence, and issued a search warrant. The police performed the search the next day.

The district court denied Thomas's motion to suppress. It found that the search warrant was supported by probable cause and that Thomas had not made the showing necessary for a *Franks* hearing. Thomas then entered his conditional guilty plea, and this appeal followed.

## II

On appeal from a district court's denial of a motion to suppress, we generally review the district court's findings of fact for clear error and its conclusions of law *de novo. United States v. Schmidt*, 700 F.3d 934, 937 (7th Cir. 2012). But because Thomas did not raise a *Brady* claim in the district court, we review the purported discovery violation for plain error. *United States v. Stott*, 245 F.3d 890, 900 (7th Cir. 2001), *amended on reh'g in part*, 15 F. App'x 355 (7th Cir. 2001).

It is an unsettled question whether *Brady* applies to pretrial suppression hearings. So far, we have declined to weigh in on the matter. See *id*. at 902. The Fifth and Ninth Circuits have held that it does. See *Smith v. Black*, 904 F.2d 950, 965–66 (5th Cir. 1990), *vacated on other grounds*, 503 U.S. 930 (1992); *United States v. Barton*, 995 F.2d 931, 935 (9th Cir. 1993). The Fourth Circuit has held that, where "a law enforcement officer intentionally [lies] in a[n] affidavit that formed the sole basis for searching the defendant's home, where evidence forming the basis of the charge to which he pled guilty was found," *Brady* renders a guilty plea not knowing and voluntary. *United States v. Fisher*, 711 F.3d 460, 469 (4th Cir. 2013). The D.C. Circuit has expressed doubt that *Brady* applies in pretrial suppression hearings, but it has not expressly decided the issue. See *United States v. Bowie*, 198 F.3d 905, 912 (D.C. Cir. 1999) ("Suppression hearings do not determine a defendant's guilt or punishment, yet *Brady* rests on the idea that due process is violated when the withheld evidence is 'material either to guilt or to punishment[.]'" (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963))). While there are good arguments on each side of the debate, the fact that the law is unsettled itself prevents any discovery violation from being plain error. See

*United States v. Olano*, 507 U.S. 725, 734 (1993) ("At a minimum, [a] court of appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law.").

There is a second reason why we need not decide whether *Brady* applies to a pretrial suppression hearing: even if it did, Thomas's claim would not succeed. To establish a *Brady* violation, Thomas must prove that "(1) the evidence at issue was favorable to the accused, either because it was exculpatory or impeaching; (2) the evidence was suppressed by the Government, either willfully or inadvertently; and (3) the denial was prejudicial." *United States v. Kimoto*, 588 F.3d 464, 474 (7th Cir. 2009) (internal citation omitted). Thomas fails the second and third parts of the test.

First, there was no suppression. "It is well established that the government may withhold the identity of a confidential informant in furtherance of the public interest in law enforcement unless the identity is relevant or helpful to the defense or essential to a fair determination of cause." *United States v. Banks*, 405 F.3d 559, 564 (7th Cir. 2005) (citing *Roviaro v. United States*, 353 U.S. 53, 59–61 (1957)). Thomas knew that there was a confidential informant, and that the informant had a criminal history. He could have moved for disclosure of the informant's identity or asked for further information about the informant's criminal history, but he took neither of these steps. At the time of the suppression hearing, the government was not planning to call the informant as a witness at trial. Moreover, based on the information presented to the district court, it is apparent that the witness's identity would not have made a difference.

There was also no prejudice. To be prejudicial under *Brady*, the information must be material—that is, there must be "a

reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 681 (1985). Thomas does not argue that he would not have pleaded guilty if the relevant information had been disclosed.

There is no reason to think that the outcome of the motion to suppress would (or should) have been any different if Thomas had known more about the informant. The issuing judge found that the search warrant was supported by probable cause, and we have no reason to disturb that conclusion. In evaluating a probable cause determination based on a confidential witness's report, we look at all the circumstances, including "[1] the level of detail, [2] the extent of firsthand observation, [3] the degree of corroboration, [4] the time between the events reported and the warrant application, and [5] whether the informant appeared or testified before the magistrate." *United States v. Glover*, 755 F.3d 811, 816 (7th Cir. 2014). We do so with great deference to the issuing judge's conclusions. *United States v. Sims*, 551 F.3d 640, 644 (7th Cir. 2008).

The confidential informant in this case performed strongly on all five points. The informant provided details about Thomas's apartment, that Thomas was a member of the Four Corner Hustler gang, and saw him remove two handguns from items of clothing. The informant described the firearms in detail, noted both had a magazine inserted, and described where they were located in the apartment. The informant stated that, based on his or her experience, they were real handguns. The informant also repeated Thomas's statement that he was "ready for any of those niggas [*sic*] who try and

take what's mine." The informant's information was corroborated: Jacobson found a prior arrest report that noted Thomas's nickname ("Burpy"), physical description, gang affiliation, age, and residence. The informant selected Thomas from a photo array. The informant identified Thomas's residence on sight; the address was in a law enforcement database. Absent an indication that Thomas intended to dispose of it, 11 days is not long enough for information about a gun kept for personal protection to become stale. *Cf. United States v. Harju*, 466 F.3d 602, 608 (7th Cir. 2006) (noting, in applying the good faith exception, that "unlike small amounts of drugs or cash, [a] gun [is] not likely to have been sold (or consumed)" within a three-week period). Finally, the informant appeared before the judge who issued the warrant, and the judge was aware of the informant's detailed criminal history and the circumstances under which the informant came to cooperate with law enforcement.

The judge was not aware of the exact benefit the informant likely sought from cooperation: not having his or her car towed. (The government maintains that the informant's car was not towed for unrelated reasons, but ultimately this makes no difference.) It seems likely, however, that the issuing judge assumed that the informant was getting a similar benefit, even if she did not know exactly what it was. See *Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 970 (7th Cir. 2003) ("[C]ourts are aware that informants are frequently facing charges and hoping for deals."). This omission does not undermine the warrant's otherwise ample probable cause.

## III

The judgment of the district court is AFFIRMED.