In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 06-2156

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JESS A. JOHNSON,

*Defendant-Appellant*.

_____

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:06CR00007-001—**John Daniel Tinder**, *Judge*.

_____

ARGUED NOVEMBER 14, 2006—DECIDED DECEMBER 13, 2006

_____

Before EASTERBROOK, *Chief Judge*, and POSNER and COFFEY, *Circuit Judges*.

POSNER, *Circuit Judge*. Under the federal sentencing regime created by the *Booker* decision, the sentencing judge is first to compute and consider the guidelines range for the defendant's offense and then to select and impose a sentence—which can be inside or outside that range (provided of course that it is within the *statutory* sentencing range)—guided by the sentencing factors in 18 U.S.C. § 3553(a). If the judge follows this procedure and commits no legal or clear factual errors and discusses the applicability of any substantial statutory sentencing

factors drawn to his attention by either party, we must uphold his sentence unless it is unreasonable. Since the statutory sentencing factors are multiple and vague, it will be the rare case in which it is possible to say that the judge who has complied with the procedural requirements set forth above imposed an unreasonable sentence. E.g., *United States v. Bullion*, 466 F.3d 574, 575 (7th Cir. 2006); *United States v. Jordan*, 435 F.3d 693, 696 (7th Cir. 2006). "His choice of sentence, whether inside or outside the guideline range, is discretionary and subject therefore to only light review." *United States v. Demaree*, 459 F.3d 791, 795 (7th Cir. 2006).

Dextromethorphan hydrobromide (DXM) is a cough suppressant found in such over-the-counter drugs as Robitussin. It is also consumed "recreationally" as an intoxicant in doses that are much greater than when used in cough medicines and are potentially fatal. It is not a controlled substance under Title 21 of the Criminal Code but it is regulated by the Food and Drug Administration, which requires that it be accurately labeled according to its intended use.

The defendant, Jess Johnson, created with another person a company to import DXM from India. Rather than having any legitimate commercial purpose in forming the company, they did it because they wanted to consume the drug themselves as an intoxicant and sell what they didn't consume to other "recreational" users in order to finance their own use and perhaps make some money; in fact they made a total of $30,000 on their sales of DXM during the short period in which they were in operation.

The company received three shipments of DXM from India, totaling 35 kilograms. The third shipment was intercepted by the FDA, which directed the company to

state its intended use. Johnson told the agency that the DXM he was importing "was for research and development only" and "in no way is this product going to be used for human consumption." In fact, though, Johnson's partner estimated that 95 percent of the company's customers were buying its product to get high.

During the four months in which the company was in business before being shut down by the FDA, it made hundreds of sales, amounting to 15 kilograms of DXM (roughly 15,000 doses). Five of its customers, all of them teenage boys, died from consuming DXM that they had bought from the company's website. Although the packages in which the chemical was shipped to purchasers were labeled "not for human consumption," Johnson admitted knowing that they bought DXM in order to get high; for they had such e-mail addresses as "poisonthebrain@digiverse.net." Two of the five deaths occurred after Johnson learned about two of the first three deaths. Yet after learning about them the only change he made in the company's modus operandi was to alter the website so that to place an order a customer had to acknowledge having read the terms and conditions of purchase, among which was that the purchaser must be at least 18 years old and be purchasing DXM solely for purposes of research. No means of verifying compliance with the conditions was established and no warning was sent to previous purchasers.

Johnson pleaded guilty to three counts of introducing a misbranded drug into interstate commerce, in violation of 21 U.S.C. § 331(a), the misbranding consisting in his representing that the drugs were intended for research rather than for human consumption. Each count was for one of the misbranded shipments that his com-

pany made that resulted in a death. The judge sentenced Johnson to consecutive prison terms totaling 77 months. (Johnson's partner received an identical sentence.) That was 61 months above the top of the applicable guidelines range though below the statutory maximum of 108 months (three years on each count). The judge based the six and a half year sentence on the lethal consequences of Johnson's acts, plus the recklessness demonstrated by his continuing to sell the misbranded product after learning that two of his customers had overdosed on it and died. The deaths of the first three teenagers might be ascribed to negligence rather than to recklessness; and the other two teenagers who died had bought the DXM from Johnson's company before he learned of any of the deaths. But of course after learning about two of the deaths, he *knew*—not merely should have known—that there was a substantial risk that more of his customers would die, and yet he continued to sell DXM for recreational use and failed to warn existing customers, including the two teenagers who died after he learned of the first two deaths. That conduct on his part—the continued selling and the failure to warn—was reckless. *United States v. Howard*, 454 F.3d 700, 704 (7th Cir. 2006); *United States v. Ladish Malting Co.*, 135 F.3d 484, 488 (7th Cir. 1998); *United States v. Ihegworo*, 929 F.2d 26, 29 (5th Cir. 1992).

Misbranding that results in multiple deaths as a consequence of the negligence of the misbrander, coupled with his recklessness in continuing to sell the product after learning that deaths had resulted, with no effort to warn existing customers, justified a sentence much longer than 16 months. The arguments that Johnson makes in favor of a sentence that would mock the gravity of his conduct are unavailing. Some of them are also in poor taste, such as

that the teenagers who died "were certainly responsible in part for the ultimate harm." That is true in a literal sense, but ignores the fact that the drugs were misbranded because there were no instructions for use; Johnson's customers overdosed because the website did not indicate what a safe dosage would be. Other arguments that he makes are beside the point, such as that the fact that misbranding carries only a three-year maximum sentence shows that Congress doesn't think it as serious as many other federal crimes. True (though not entirely, since with each shipment a separate count, consecutive sentencing can produce a very long sentence). That is why Johnson's sentence is much lower than it would be had the deaths resulted from his sale of a controlled substance; 21 U.S.C. § 841(b)(1)(B)(iii), for example, imposes a mandatory minimum sentence of 20 years on someone who sells more than five grams of crack, if death or serious injury results to a consumer of the crack.

The defendant's other arguments joust futilely with the relative weight that the district judge placed on the various sentencing factors in section 3553(a). Such quarrels do not establish the unreasonableness of a sentence. The statute does not weight the factors. That is left to the sentencing judge, within the bounds of reason, which are wide. *United States v. Bullion*, *supra*, 466 F.3d at 577. Johnson's crimes would have justified on grounds of both retribution and deterrence an even longer sentence than he received. The statutory maximum of 108 months (9 years) would have been reasonable. The judge displayed lenity, not the reverse as Johnson argues.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*