In the

# United States Court of Appeals

### For the Seventh Circuit

_____

Nos. 18-1275 and 18-1598

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RUBY MOHSIN and
MOHAMMAD KHAN,

*Defendants-Appellants.*

_____

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:15-cr-00217 — **Charles R. Norgle,** *Judge.*

_____

ARGUED SEPTEMBER 20, 2018 — DECIDED SEPTEMBER 25, 2018

_____

Before MANION, HAMILTON, and SCUDDER, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Ruby Mohsin and Mohammad Khan pleaded guilty to conspiring to sell drugs misbranded as incense or potpourri. The conduct occurred over approximately eight months in 2011 from a store Mohsin owned in the Fox Valley Mall in Aurora, Illinois. At sentencing the district court found that Mohsin and Khan consciously or recklessly disregarded the risk that the

mislabeled products could cause death or serious injury. This finding had the effect of significantly increasing Mohsin and Khan's advisory ranges under the U.S. Sentencing Guidelines. The finding reflected clear error, however, as the record before the district court, while supporting a conclusion that Mohsin and Khan knew customers (and perhaps teenagers) were smoking the products to obtain marijuana-like highs, did not support a determination that either Mohsin or Khan knew the products presented lethal risks to users.[*]

**I**

Ruby Mohsin owned and operated the Cigar Box in the Fox Valley Mall where she employed Khan as a cashier. In addition to tobacco, the store sold products labeled as incense and potpourri under names like *iAroma*, *Zero Gravity*, and *Head Trip*. Mohsin and Khan knew customers were buying these products—commonly known as synthetic marijuana—to smoke or ingest.

In June 2011, Mohsin sold nineteen-year-old Max Dobner and another teenager three packages of *iAroma*. Dobner and his friend then smoked the substance in the mall's parking lot. Two hours later Dobner crashed his vehicle into a house in North Aurora, Illinois. The accident killed Dobner and in time brought significant attention to the products Mohsin and Khan were selling out of the Cigar Box.

Mohsin and Khan ultimately were indicted and each later pleaded guilty to a single count of conspiring to distribute misbranded drugs, in violation of 18 U.S.C. § 371 and

---

[*] Following oral argument, we issued an order directing Khan's immediate release from prison on supervised release. This opinion explains the basis for that decision.

21 U.S.C. §§ 331(c) and 333(a)(2). In their plea agreements, Mohsin and Khan admitted that the synthetic marijuana products they sold contained inadequate consumer warnings, failed to identify the products' active ingredients, and were mislabeled in an effort to mislead regulators regarding the products' status as drugs—all in violation of the Federal Food, Drug and Cosmetic Act.

In its Presentence Investigation Reports, the Probation Office recommended that both Mohsin and Khan's advisory Guidelines ranges reflect enhancements for engaging in offense conduct entailing "the conscious or reckless risk of death or serious bodily injury." U.S.S.G. § 2B1.1(b)(15)(A). The proposed enhancements were significant because of their impact on the resulting advisory ranges. Section 2B1.1(b)(15)(A) calls for a two-level enhancement to a defendant's offense level, unless the resulting offense level is less than 14, in which case the offense level is increased to 14. Under the Probation Office's calculations, Mohsin's total offense level included a two-level enhancement under § 2B1.1(b)(15)(A), resulting in an advisory range of 12 to 18 months' imprisonment. (This range also reflected an enhancement pursuant to U.S.S.G. § 3B1.1(c) for Mohsin's role as a manager in the offense conduct.) As for Khan's total offense level, the Probation Office included a four-level enhancement under § 2B1.1(b)(15)(A), resulting in an advisory range of 10 to 16 months' imprisonment.

Neither defendant's plea agreement contemplated an enhancement under § 2B1.1(b)(15)(A). Accordingly, the Probation Office's recommendation that the facts warranted the enhancement for both Mohsin and Khan became the focus of the ensuing sentencing proceedings.

The district court sentenced Mohsin first, and, in doing so, held a hearing and received testimony from several witnesses. Dr. Jordan Trecki, a pharmacologist with the Drug Enforcement Administration, testified that synthetic marijuana had more severe effects on consumers than traditional marijuana. A customer of the Cigar Box, Janus Smith, testified that she observed her son experience a severe physical reaction to one of the synthetic marijuana products he had purchased from Mohsin. Smith further testified that she visited the Cigar Box and warned Mohsin of her son's "bad reaction," explaining that it landed him in the "hospital."

Mohsin's counsel attempted to cross-examine Smith, but the district court substantially curtailed that effort, stating that Smith was a credible witness and that the court had heard everything it needed for sentencing purposes. Had Mohsin's counsel been permitted to continue, Smith's testimony was vulnerable to meaningful impeachment, as there were significant inconsistencies between her account at Mohsin's hearing and her prior deposition testimony. For example, Smith stated at her deposition that she never told the hospital doctors that synthetic marijuana had anything to do with her son's visit to the emergency room. Smith also contradicted herself in describing what, if anything, she observed of her son's reaction to smoking synthetic marijuana.

Mohsin's sentencing hearing further included testimony from other witnesses. For example, Brycen Rodriguez, a customer of the Cigar Box, testified about an occasion on which he bought and smoked synthetic marijuana and experienced paranoia, extreme anxiety, and difficulty breathing. The district court also heard testimony from Max

Dobner's mother and grandmother about Dobner's tragic death and its impact on their family.

After hearing this testimony, the district court determined that Mohsin's advisory range was 21 to 27 months' imprisonment, reflecting a total offense level of 16, which included the two-level enhancement under § 2B1.1(b)(15)(A) for engaging in conduct that consciously or recklessly risked death or serious bodily injury. The enhancement was warranted, the district court reasoned, because Mohsin had experience taking and administering medication (to her son) and, as a result, knew of the dangers of abuse or misuse. Our review of the sentencing transcript leaves us with the impression that the district court, while not saying so expressly, also may have placed some weight on Janus Smith's testimony (about her son having to go to the hospital after having a bad reaction to synthetic marijuana he purchased at the Cigar Box) to support the enhancement.

In calculating Mohsin's advisory range, the district court declined to afford Mohsin credit for acceptance of responsibility, emphasizing not only that she had filed multiple sentencing-related motions, but also testified that her offense conduct reflected a "mistake"—both of which the district court found inconsistent with someone truly sorry for her offense conduct. (Mohsin testified at sentencing with the aid of an interpreter, and it appears she used an Urdu word for "mistake" that connoted remorse but was misunderstood by the district court.) In the end, the district court sentenced Mohsin to 24 months' imprisonment. Had the court not applied the two-level enhancement under § 2B1.1(b)(15)(A), Mohsin's advisory range would have been 15 to 21 months' imprisonment.

As for Khan, the district court found his advisory Guidelines range to be 10 to 16 months' imprisonment based on a total offense level of 12. While affording Khan two levels of credit for having accepted responsibility for his offense conduct (see U.S.S.G. § 3E1.1(a)), the district court found that Khan's conduct warranted a four-level enhancement under § 2B1.1(b)(15)(A) for entailing a conscious or reckless risk of death or serious bodily injury. (Khan's enhancement was four levels because it took four levels to raise his total offense level, before receiving acceptance-of-responsibility credit, to 14, as required by the terms and operation of § 2B1.1(b)(15)(A).) The district court stated that the enhancement was warranted because "[Khan] recklessly disregarded the risk [of death or serious bodily injury] when he sold these products to the various purchasers not knowing what the effect ultimately would be on them one way or another." Or, as the district court similarly reasoned, Khan "consciously disregarded what he might have learned if he had looked further into what he was selling."

Mohsin and Khan appeal their sentences, focusing on the error they believe the district court made in finding that their offense conduct reflected knowledge or awareness that consumers who smoked or ingested the misbranded incense or potpourri faced a risk of death or serious bodily injury, thereby warranting the enhancements under § 2B1.1(b)(15)(A).

## II

Whether a defendant qualifies for an enhancement is an issue of fact we review for clear error. *United States v. Vivit*, 214 F.3d 908, 920 (7th Cir. 2000). Based upon our review of the sentencing record, we conclude that Mohsin and Khan have

satisfied this standard. The district court's error was the product of equating Mohsin and Khan's knowledge that customers were using the misbranded incense or potpourri to achieve a marijuana-like high with Mohsin and Khan consciously or recklessly risking that the products would cause death or serious bodily injury.

While § 2B1.1(b)(15)(A) does not define what constitutes "the conscious or reckless risk of death or serious bodily injury," other provisions of the Guidelines and our caselaw provide important instruction. In a mail fraud case involving false billings for medical procedures to insurance companies, we affirmed the district court's determination that the defendant physician's conduct involved "the conscious or reckless risk of serious bodily injury" and thus warranted a two-level enhancement under U.S.S.G. § 2F1.1(b)(6)(A), a provision the Sentencing Commission has since consolidated with § 2B1.1. See *Vivit*, 214 F.3d at 920–22. In doing so, we explained that recklessness reflects a mental state in which a defendant "was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." *Id*. at 920–21 (taking direction on the meaning of "reckless" from the definition in Application Note 1 to U.S.S.G. § 2A1.4, the guideline applicable to involuntary manslaughter).

So, too, did our opinion in *Vivit* explain that "serious bodily injury" is a phrase of general applicability used throughout the Guidelines to mean "'injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ or mental faculty; or requiring medical intervention such as surgery,

hospitalization or physical rehabilitation.'" *Id*. at 920 (quoting U.S.S.G. § 1B1.1 n.1(J)).

The district court's primary reason for applying the enhancement to Mohsin—her personal experience using and administering medication—does not support the conclusion that Mohsin had any awareness the synthetic marijuana products she sold posed a risk of death or serious bodily injury. General awareness of the health risks of taking medications does not demonstrate a defendant's specific knowledge or awareness of the risks presented by a particular substance.

To be sure, the record fully supports a finding at the heart of Mohsin's criminal conduct—that she knew customers were ingesting or smoking the mislabeled incense and potpourri products to achieve a marijuana-like high. But knowing that someone will smoke a product to achieve a marijuana-like high does not—without more—show a "conscious or reckless risk of death or serious bodily injury." The more was missing.

The government presented testimony, including from the DEA pharmacologist, that the effects of synthetic marijuana can be acute and often exceed those of traditional marijuana. Yet there was an absence of evidence showing Mohsin knew of these harsher effects or, more to the point, that she had any awareness that consuming the mislabeled incense or potpourri risked killing or seriously injuring consumers. And it is not enough to say (at a higher level of generality) that such risk is always present with the consumption of illegal drugs, for § 2B1.1(b)(15)(A) required the district court to find by a preponderance of evidence that Mohsin was conscious of or recklessly risked that *iAroma*, *Zero Gravity*, *Head Trip*, or another of the synthetic marijuana products she sold out of

the Cigar Box would kill or seriously injure consumers. On this record, the case stands in sharp contrast to *United States v. Johnson*, where the facts showed that the defendant continued to sell cough suppressants over the internet after learning that two teenagers had died from overdosing on the product. See 471 F.3d 764, 765–66 (7th Cir. 2016).

The government sought to use Janus Smith to demonstrate that Mohsin knew that the synthetic marijuana products posed serious health risks. Indeed, Smith testified that her son ended up in the hospital after consuming one of the products sold at the Cigar Box. The district court severely limited cross-examination of Smith, however, and as a result never permitted Mohsin's counsel to demonstrate that Smith's deposition testimony—in which Smith made statements suggesting her son went to the hospital for reasons unrelated to consuming synthetic marijuana—may have substantially undermined the testimony she provided at Mohsin's sentencing hearing. While the full protections of due process may be diminished at sentencing, fundamental fairness still requires a district court to base its sentencing determination on reliable evidence. See *United States v. Ghiassi*, 729 F.3d 690, 696 (7th Cir. 2013). Where, as here, a defendant possesses information that may cast significant doubt on a material witness's testimony on a challenged sentencing enhancement, a defendant has a right to reasonably cross-examine the witness or at least some opportunity to bring contrary information to the district court's attention before the court makes pertinent sentencing findings, including findings about the credibility of the witness. In light of the substantial limitation placed on Mohsin's cross-examination of Smith, the district court committed error to the extent, if any, it relied on

Smith's testimony to find that Mohsin's offense conduct warranted an enhancement under § 2B1.1(b)(15)(A).

The record similarly lacks sufficient evidence to support an enhancement for Khan under § 2B1.1(b)(15)(A). The district court's justification—that Khan sold the products, sometimes to teenagers, knowing they were being ingested but not knowing what effect they may have—does not establish that Khan was aware of, or even had reason to suspect, that the products posed a risk of death or serious injury. Nor was it proper for the district court to find support for the enhancement on the basis that Khan failed to learn the health risks of the products he sold from the Cigar Box. The guideline enhancement speaks not in terms of negligence, but rather conscious or reckless risk. The evidence before the district court did not support imposition of the enhancement, and this error had the substantial adverse effect of increasing Khan's advisory Guidelines range from 0 to 6 months' imprisonment to 10 to 16 months.

We owe a word about whether Max Dobner's death, following his smoking of *iAroma* purchased from the Cigar Box, may have supported the enhancements under § 2B1.1(b)(15)(A). The government did not advance this argument, nor did the district court find that Dobner's death provided the factual support for enhancing either Mohsin or Khan's advisory range. We do not read the record to compel a contrary conclusion, as no party has presented evidence showing that Mohsin or Khan learned (at least during the period of the charged conspiracy) that the mislabeled drugs may have caused Dobner's death.

Finally, Mohsin contends that the district court committed errors at sentencing by denying her credit for acceptance of

responsibility under U.S.S.G. § 3E1.1 and otherwise inadequately considering the factors in 18 U.S.C. § 3553(a). For his part, Khan advances a similar argument regarding the district court's consideration of the § 3553(a) factors. We need not address these contentions, as resentencing of both Mohsin and Khan is independently warranted as a result of the district court's error applying the multi-level enhancement under § 2B1.1(b)(15)(A). The district court will have an opportunity to take a fresh look at these other issues at resentencing.

For these reasons, we VACATE and REMAND for resentencing. The resentencing of both Mohsin and Khan shall occur on an expedited basis and without delay. Circuit Rule 36 shall apply on remand.