In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1238

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

WARREN N. BARR, III,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14-CR-287 — **Charles R. Norgle**, *Judge.*

ARGUED DECEMBER 4, 2019 — DECIDED MAY 26, 2020

Before MANION, KANNE, and BARRETT, *Circuit Judges.*

KANNE, *Circuit Judge.* In 2014, the federal government
charged Warren Barr with federal crimes for his role in a
fraudulent real-estate-selling scheme in Chicago. But when
law-enforcement officers went to arrest Barr, they discovered
he was living in Saudi Arabia. For months, FBI agents at-
tempted to extradite Barr to the United States. Despite this ef-
fort, and before the agents could get to Barr, Saudi Arabian
officials detained him for unrelated conduct.

Thereafter, Barr spent several months in a Saudi Arabian prison—and once he was released, federal agents brought him back to the United States to face the federal charges against him. Barr pled guilty to making false statements to a financial institution, and he then filed a variety of motions: he asked the district court to allow more time for newly retained counsel to obtain government clearance and review classified materials; to dismiss the indictment; and to withdraw his guilty plea. The district court denied these motions and entered an order finding Barr guilty.

At his sentencing hearing, Barr tried to argue that his time in Saudi Arabia should be a mitigating factor. The district court disagreed and prevented Barr from advancing this argument at the hearing. Frustrated with this result, Barr sought the judge's recusal. The judge denied the recusal motion and sentenced Barr to 87 months' imprisonment.

Now Barr challenges his sentence and the district court's orders denying his motions for additional time, the dismissal of the indictment, the withdrawal of his guilty plea, and the judge's recusal. Because we find no error in any of these rulings, we affirm.

## I. BACKGROUND

As a partner of a real-estate-development company called 13th & State, LLC, Warren Barr managed and developed real estate in Chicago. In 2004, the company started developing a condominium building in downtown Chicago; it would be named Vision on State. The company financed this project with a 55.7-million-dollar loan from IndyMac Bank.

In the same year development of the property began, 13th & State began selling residential units in Vision on State. But

sales ground to a halt by March 2007. Around this time, Barr and other members of 13th & State allegedly started recruiting "straw buyers" to purchase Vision on State condos at an inflated price. As a part of this scheme, 13th & State and the recruited buyers made false representations in loan applications and real-estate contracts, thus enabling buyers to successfully purchase the condos.

Barr got involved as a buyer in this scheme about a year later by applying for a loan to purchase a Vision on State condo. As a part of his application, Barr submitted that he had two bank accounts containing over $70,000; that he was not a party to any lawsuit; and that he did not borrow any money used as a down payment. These were all lies: Barr's bank accounts contained about $4,000 combined; he was a party to several lawsuits; and 13th & State loaned him all the money for his down payment.

As a result of this scheme, in May 2014 the government charged Barr—and five others—with multiple counts of bank fraud, 18 U.S.C. § 1344, and with making false statements to a financial institution, 18 U.S.C. § 1014. The district court issued a warrant for Barr's arrest. But his arrest proved difficult, as he was living in Saudi Arabia. Despite this complication, by July FBI agents had contacted Barr and were negotiating for his voluntary return to the United States. Barr, however, had run into financial difficulties in Saudi Arabia; he could not pay his hotel bill and was unsure if he could afford a flight back to the United States. Indeed, agents worried that Barr might soon be put in debtors' prison. So, agents continued to work with Barr and his lawyer to figure out a way to extradite Barr.

About a month after agents originally contacted Barr, Interpol[1]—at the request of the FBI—issued a "red notice"[2] for Barr's arrest and extradition from Saudi Arabia to the United States. But Saudi Arabian officials arrested Barr around the same time for failing to pay his approximately $26,250 in debts, including a debt owed to a hotel for his recent stay.

Agents continued to struggle in their attempt to extradite Barr. During this time, Barr spent about six months detained in Saudi Arabia in what he describes as "squalid conditions." (Appellant's Br. at 12.) Finally, in January 2015, Saudi Arabia's Ministry of Interior approved a transfer of Barr into FBI custody. The next month, agents escorted Barr back to the United States.

Over a year after he returned to the United States, Barr pled guilty to one count of making a false statement to a financial institution, 18 U.S.C. § 1014. The district court accepted Barr's guilty plea, entered an order finding Barr guilty of the false-statement offense, set Barr's case for sentencing, and eventually dismissed all other counts.

As Barr began to prepare for his sentencing hearing, he believed documents concerning his detention in Saudi Arabia were relevant; and he believed the government's failure to

---

[1] Interpol describes itself as "an inter-governmental organization" with 194 member countries that helps "police in all [member countries] to work together to make the world a safer place." *What is Interpol?*, Interpol, https://www.interpol.int/en/Who-we-are/What-is-INTERPOL (last visited April 29, 2020).

[2] A red notice "is a request to law enforcement worldwide to locate and provisionally arrest a person pending extradition, surrender, or similar legal action." *Red Notices*, Interpol, https://www.interpol.int/en/How-we-work/Notices/Red-Notices (last visited April 29, 2020).

produce all those documents was problematic. He accordingly filed a motion in March 2017, seeking discovery of evidence that was "in any way favorable to him or that could lead to such evidence," including additional documents the government had concerning his detention in Saudi Arabia. *See Brady v. Maryland*, 373 U.S. 83, 87–88 (1963). The district court granted Barr's discovery motion three days after Barr filed it.

The government then pointed out that some of the requested documents may be classified. As a result, Barr's counsel underwent a government-clearance process to view the classified material. The government allowed Barr and his attorney to review three classified documents along with additional unclassified material.

Then, in November 2018, Barr's attorney filed a motion to withdraw because Barr had retained new counsel. Before the district court ruled on that motion, the government turned over more emails concerning the FBI's attempt to bring Barr back to the United States. The district court allowed Barr to substitute his counsel and delayed the sentencing hearing for another three months. All told, the court continued the sentencing hearing more than ten times.

In January 2019, six days before the scheduled sentencing hearing and three years into the litigation, Barr filed three motions. First, he sought to withdraw his guilty plea, alleging that—due to his counsel's ineffective assistance—his plea was involuntary. Second, he asked the court to dismiss the indictment because of an alleged *Brady* violation. Third, Barr asked the court to continue his sentencing hearing so his new counsel could seek government clearance and review the previously disclosed classified documents. The district court denied all three motions.

At the sentencing hearing, the government began by tendering to the court classified documents on an *ex parte* basis so the court could determine if the documents—concerning Barr's time in Saudi Arabia—were material for Barr's sentencing. Barr objected, arguing that his new counsel could not see these documents. The district court granted Barr's objection, but not in the way Barr wanted: instead of just refusing to view the documents on an *ex parte* basis, the court decided, "I will totally ignore and not consider whatsoever, in light of your objection, anything that happened to Mr. Barr in Saudi Arabia."

With this decision, the focus of the hearing shifted to which sentence was most appropriate. Barr argued at length that his sentence should take account of his elderly age, lack of prior criminal history, employment history, role as a primary caregiver for his sister, and the sentences of his co-schemers. *See* 18 U.S.C. § 3553(a).

Then, in violation of the court's earlier instruction, Barr mentioned his incarceration in Saudi Arabia as a mitigating factor. The district court quickly reminded Barr that it had already ruled it would "completely disregard … whatever it is that Mr. Barr said occurred in Saudi Arabia." After more back-and-forth with the judge on this revisited topic, Barr's counsel asked to "gather [his] composure" in a five-minute recess, which the court granted. After returning from the recess, Barr informed the district judge, Judge Norgle, that he would seek the judge's recusal. Judge Norgle recessed the hearing and asked Barr to have the motion ready the next morning—Barr filed it the same day.

A few weeks later, the district court denied Barr's motion for recusal and scheduled the remainder of Barr's sentencing

hearing for a few days later. At the continued sentencing hearing, Barr made more arguments for leniency under the sentencing factors listed in 18 U.S.C. § 3553(a). The court calculated Barr's guidelines range to be 121 to 151 months. Then—noting several mitigating circumstances—the court sentenced Barr to 87 months' imprisonment, well below the guidelines range.

## II. ANALYSIS

Barr raises five issues on appeal. First, he argues the district court committed procedural error by failing to consider Barr's mitigation argument concerning his time in Saudi Arabia. Second, he argues the district court should have allowed his new counsel time to seek government clearance and to review the classified materials. Third, he argues the district court erred by denying his motion to dismiss the indictment. Fourth, he argues the district court should have allowed Barr to withdraw his guilty plea. And finally, he argues that Judge Norgle was required to recuse himself.

### A. Barr's Mitigation Argument

In his sentencing memo, Barr quoted language from 18 U.S.C. § 3553(a) to assert that, in light of his detention in Saudi Arabia, "any additional period of incarceration would be 'greater than necessary' to achieve any legitimate aims of sentencing." *See* 18 U.S.C. § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."). Those legitimate aims of sentencing are listed in § 3553(a)(2), which recognizes the need for the sentence imposed to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense;

(2) adequately deter criminal conduct; (3) protect the public from further crimes of the defendant; and (4) provide the defendant with training, other correctional treatment, or medical care.

Barr argues that the district court committed procedural error by refusing to address this mitigation argument. We review claims of procedural error at sentencing *de novo*. *United States v. Bustos*, 912 F.3d 1059, 1062 (7th Cir. 2019).

"While the sentencing guidelines are advisory, the district court must apply the sentencing factors" listed under § 3553(a). *United States v. Pilon*, 734 F.3d 649, 655 (7th Cir. 2013). In fashioning an appropriate sentence, the district court need not address every factor under § 3553(a) in a checklist manner. *United States v. Hodge*, 729 F.3d 717, 721 (7th Cir. 2013). Instead, the court "may simply give an adequate statement of reasons, consistent with § 3553(a), for thinking the sentence it selects is appropriate." *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008).

In selecting and explaining a sentence, the district court is not required to "comment on every argument the defendant raises." *United States v. Miranda*, 505 F.3d 785, 792 (7th Cir. 2007). Arguments without merit "can, and for the sake of judicial economy should, be passed over in silence." *United States v. Cunningham*, 429 F.3d 673, 678 (7th Cir. 2005). Still, we expect a district court to address a defendant's principal, non-frivolous arguments in mitigation. *United States v. Chapman*, 694 F.3d 908, 913 (7th Cir. 2012).

In short, a court's consideration of an argument must be commensurate with the weight that argument carries in the defendant's case in mitigation. *See Pilon*, 734 F.3d at 656. If a

defendant relied heavily on a mitigation argument that is factually supported, the record must show that the district court adequately considered the argument. *See Chapman*, 694 F.3d at 913–14. By contrast, a district court is not required to respond to an inconsequential argument that does not relate to the § 3553(a) sentencing factors. *See, e.g.*, *United States v. Moskop*, 499 F. App'x 592, 596–97 (7th Cir. 2013).

Barr has not shown that his time in Saudi Arabia must be considered in order to achieve the legitimate aims of sentencing under § 3553(a)(2). He has failed to even argue how his time in Saudi Arabia concerns any of the specific aims of sentencing. And, based on the partial argument made in Barr's sentencing memo, his only conceivable mitigating argument appears to fall under § 3553(a)(2)(A). That is, because he already spent time detained in Saudi Arabia, an additional period of incarceration is unnecessary to justly punish him for the present offense. *See* 18 U.S.C. § 3553(a)(2)(A). This argument—that the district court should have considered "that [Barr] has essentially already served … some time for his charged offenses"—depends on Barr's assertion that he was jailed in Saudi Arabia "as a direct result of this case." (Appellant's Br. at 28.) The problem is that, even if Barr's crime in the United States somehow led to his detention in Saudi Arabia, that detention time was not punishment for Barr's U.S. crime; it was a consequence of Barr's conduct in Saudi Arabia: not paying his debts.

To be sure, it is possible that Barr would not have been jailed in Saudi Arabia had he not committed the offense at issue here: making false statements to a financial institution under 18 U.S.C. § 1014. The record does show, as Barr suggests, that FBI agents sought help from Saudi Arabian officials in

their attempt to extradite Barr. But the record also shows—contrary to Barr's argument—that Barr's jail time in Saudi Arabia was based on his conduct in Saudi Arabia. Accordingly, that jail time was not a sentence imposed for his fraudulent conduct in the United States.

So, notwithstanding some causal connection between Barr's transgressions in the United States and in Saudi Arabia, his conduct in Saudi Arabia was not part of Barr's federal offense. And Barr does not present any legal authority supporting his argument that the district court is required to take time served for an unrelated offense in a foreign country into consideration when analyzing "whether a defendant has been already punished for his crime." (Appellant's Br. at 28.) *Cf.* 18 U.S.C. § 3553(a)(2)(A) (stating the need for a sentence "to reflect the seriousness of *the offense*" and "to provide just punishment *for the offense*" (emphases added)). The fact that Barr was detained for separate conduct in Saudi Arabia does not directly impact the need for his sentence to reflect the seriousness of his offense: making false statements to a financial institution in Illinois.

In sum, we fail to see how Barr's time in Saudi Arabia relates to any of the legitimate aims of sentencing a district court must consider, and Barr has not advanced any arguments to the contrary. He also fails to make any other cognizable attempts to relate his detention in Saudi Arabia to other § 3553(a) factors. His argument thus "does not remotely resemble a factor in mitigation," *Moskop*, 499 F. App'x at 596, and the district court did not need to address it.

*B. Review of Classified Materials*

Barr also argues that the district court abused its discretion by not allowing additional time for his later-retained counsel to both seek government clearance and review classified documents; he says this decision denied Barr "Due Process of law" by denying "him the full and fair opportunity to mount a defense." (Appellant's Br. at 29.) But Barr has neither provided explanatory reasoning for these assertions nor cited any legal authority in support.

This undeveloped, unsupported argument is waived. *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."). "It is not our job to do the legal research that [Barr] has omitted." *Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp.*, 419 F.3d 576, 581 (7th Cir. 2005).

*C. Motion to Dismiss Indictment*

Barr argued before the district court that the indictment should be dismissed because the government violated its obligation, as recognized in *Brady v. Maryland*, 373 U.S. 83 (1963), to disclose evidence that is material to guilt or punishment. He specifically asserted that because the government disclosed the relevant documents 20 months late, that delayed disclosure amounted to a violation of due process. He also argued that this violation was exacerbated by the government's continued withholding of other documents concerning his time in Saudi Arabia.

The district court disagreed. It held that the later-disclosed documents had not been withheld from Barr until it was too late to use the documents. And even if Barr could demonstrate

the government withheld other evidence, the district court determined that evidence regarding Barr's time in Saudi Arabia is not *material* to his sentencing, and therefore need not be disclosed.

Now Barr argues the district court erred in both aspects of this decision. When reviewing a court's decision granting or denying a motion to dismiss an indictment because of an alleged *Brady* violation, "we look only to see if the district court abused its discretion." *United States v. Cherry*, 920 F.3d 1126, 1140 (7th Cir. 2019).

The government violates its *Brady* obligation only if evidence is *suppressed*—that is, if the "prosecution failed to disclose the evidence before it was too late for the defendant to make use of the evidence." *United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002). Delayed disclosure alone does not "in and of itself constitute a *Brady* violation." *Id.* Instead, the disclosure must come so late as to deny the defendant "effective use" of the evidence during the relevant proceeding. *United States v. Walton*, 217 F.3d 443, 451 (7th Cir. 2000). If a defendant receives relevant evidence—albeit late—and is left with time to make use of it, that evidence has not been suppressed. *See, e.g., United States v. Lawson*, 810 F.3d 1032, 1043 (7th Cir. 2016) (evidence disclosed mid-trial was not suppressed when the district court gave the defendant five days to review it); *O'Hara*, 301 F.3d at 569 (evidence disclosed mid-trial was not suppressed because the district court "appropriately granted a continuance").

Barr received additional *Brady* material from the government in November 2018—about 20 months after the district court's discovery order. But Barr had ample time to make use of this evidence at his sentencing hearing. After Barr received

the new evidence, the district court granted Barr a continuance of his sentencing hearing, rescheduling it for January 2019. This gave Barr more than a month to review this evidence; that was enough time to make use of it.

Turning to the second aspect of the district court's order, Barr argues that the government is still suppressing materials concerning his time in Saudi Arabia. Even if that were true, a *Brady* violation occurs only if the suppression of evidence is prejudicial to the defendant. *United States v. Thomas*, 835 F.3d 730, 734 (7th Cir. 2016). And for information to be prejudicial, it must be material: "there must be 'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* at 735 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

Barr claims—with no factual support—that the government is withholding evidence regarding his arrest and detention in Saudi Arabia. But, as we have already explained, Barr failed to link his detention in Saudi Arabia for conduct that occurred there to his sentencing for making false statements to a financial institution in Illinois. In short, it was not an abuse of discretion for the district court to hold that there is not a reasonable probability that this allegedly suppressed evidence would have changed the result of Barr's sentencing hearing.

Accordingly, the district court did not abuse its discretion in denying Barr's motion to dismiss the indictment. As such, the court had no reason to grant an evidentiary hearing to investigate non-existent *Brady* violations.

*D. Motion to Withdraw Guilty Plea*

Barr moved to withdraw his guilty plea, arguing that his plea was a result of his counsel's ineffective assistance. He alleged that, before he pled guilty, his attorney did not inform him that the government—at sentencing—would have to prove the amount of loss attributable to Barr by only a preponderance of the evidence.

The district court denied this motion. It reasoned that Barr failed to prove both that his counsel's performance was objectively unreasonable, and that he would not have pled guilty had he known the correct standard of proof. Barr now argues the district court erred in denying this motion.

We review a district court's ruling on a motion to withdraw a guilty plea for an abuse of discretion. *United States v. Jansen*, 884 F.3d 649, 656 (7th Cir. 2018). And in doing so, we "will uphold a district court's factual findings about the existence of a fair or just reason to withdraw the plea unless they are clearly erroneous." *United States v. Chavers*, 515 F.3d 722, 724 (7th Cir. 2008).

A defendant's right to withdraw a guilty plea is not absolute. *United States v. Lundy*, 484 F.3d 480, 484 (7th Cir. 2007). "Guilty pleas are not to be treated as a strategic maneuver by the parties, and we presume the verity of the defendant's statements made at a Rule 11 colloquy." *United States v. Rinaldi*, 461 F.3d 922, 926–27 (7th Cir. 2006); *see* Fed. R. Crim. P. 11(b) (requiring the court—prior to accepting a guilty plea—to address the defendant, inform him of his rights, determine that there is a factual basis for the plea, and determine that the plea is voluntary). Once a guilty plea is accepted, it may only be withdrawn for a "fair and just reason." Fed. R.

Crim. P. 11(d)(2)(B); *see United States v. Carroll*, 412 F.3d 787, 792 (7th Cir. 2005). We recognize several fair and just reasons to withdraw a guilty plea, including legal innocence, actual innocence, and that the plea was not made knowingly and voluntarily. *United States v. Mays*, 593 F.3d 603, 607 (7th Cir. 2010).

"Ineffective assistance of counsel can render a plea agreement involuntary, and is therefore a valid basis for withdrawing a guilty plea." *Lundy*, 484 F.3d at 484. To show ineffective assistance of counsel in this context, a defendant must show that (1) the attorney's performance was objectively unreasonable; and (2) but for the attorney's deficient performance, the defendant would not have pled guilty. *United States v. Peleti*, 576 F.3d 377, 383 (7th Cir. 2009). We are not required to address these elements in a particular order. *See Strickland v. Washington*, 466 U.S. 668, 697 (1984).

Here, Barr has failed to show prejudice—that he would not have pled guilty had his counsel informed him of the correct burden of proof regarding the loss amount. We do not "upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017). But *post hoc* assertions are all that Barr has provided. In support of his motion to withdraw his plea, Barr submitted a post-sentencing affidavit that claims he pled guilty because of his mistaken belief that the government would have to prove his loss amount beyond a reasonable doubt. He has not produced any other evidence—let alone evidence contemporaneous with his guilty plea—that suggests he would not have pled guilty, had he known of the government's burden. *Cf. United States v. Delhorno*, 915 F.3d 449, 454 (7th Cir. 2019).

As a result, he has not shown prejudice, as required to upset a guilty plea on ineffective-assistance grounds.

Finally, Barr asserts, as a standalone "fair and just" reason to withdraw his plea, his "wrongly held belief" that the government would have to prove loss amount beyond a reasonable doubt. (Appellant's Br. at 37.) The district court, however, determined that Barr did not demonstrate a fair and just reason to withdraw his guilty plea—in part because at the change-of-plea hearing Barr did not dispute the recitation of facts in his plea agreement.

On appeal, Barr does not contest the validity of the statements he made during his Rule 11 colloquy. And he does not dispute the facts that establish his guilt. Instead, he simply argues that he "unquestionably provided the [d]istrict [c]ourt … with 'a fair and just reason,' for the withdrawal of his guilty plea." (*Id.*) We disagree.

Essentially, Barr thought the government would not be able to prove as much loss, which would have produced a lower guidelines range. In this way, Barr's argument is just another way of saying that he underestimated his sentence when entering his plea; and that—we have recognized—is not a fair and just reason to withdraw a guilty plea. *See United States v. Redmond*, 667 F.3d 863, 872 (7th Cir. 2012); *United States v. Bowlin*, 534 F.3d 654, 660 (7th Cir. 2008) ("A mistake about the substantive offense goes to the heart of the guilty plea; a mistake about the possible sentence … does not.").

So, Barr "presented no legitimate reason to withdraw his plea," *Redmond*, 667 F.3d at 874, and the district court did not abuse its discretion by denying Barr's motion.

*E. Motion for Recusal*

Finally, Barr takes issue with Judge Norgle's refusal to recuse himself under 28 U.S.C. §§ 144, 455(a), and 455(b)(1). Barr also argues that the district court erred by seeking the government's input regarding his motion for recusal.

*1. Section 144*

Section 144 requires the recusal of a district judge if "a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party." 28 U.S.C. § 144. The affidavit must also be "accompanied by a certificate of counsel of record stating that [the affidavit] is made in good faith." *Id.*

Recusal is mandatory under § 144 if the "moving papers are sufficient," making § 144 a powerful tool that could easily be abused. *United States v. Betts-Gaston*, 860 F.3d 525, 537 (7th Cir. 2017). So, we strictly enforce its requirements. *See United States v. Barnes*, 909 F.2d 1059, 1072 (7th Cir. 1990). This means that a district court can deny a motion for recusal under § 144 if the moving party fails to satisfy the statute's strict procedural demands. *See, e.g.*, *Betts-Gaston*, 860 F.3d at 537–38 (affirming the district court's denial of a § 144 recusal motion for multiple reasons, including failure to file an affidavit and failure to file a certificate of good faith); *United States v. Sykes*, 7 F.3d 1331, 1339 (1993) (holding that recusal was not required where the party's affidavit "fails to satisfy the stringent requirements of section 144 in a number of respects").

Barr argues that he satisfied the requirements of § 144, mandating Judge Norgle's recusal from the case. But Barr's

counsel never filed a certificate, as required, stating that Barr's affidavit was filed in good faith. And on appeal, Barr does not contest this failing. By not filing the required certificate, Barr and his counsel failed to comply with the procedural demands of § 144. Thus, the district court did not err by denying Barr's § 144 motion.

*2. Section 455(a)*

Section 455(a) provides that a district judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). We review preserved claims under § 455(a) *de novo. United States v. Simon*, 937 F.3d 820, 826 (7th Cir. 2019).

To obtain a judge's recusal under § 455(a), a party must show "that a judge's impartiality *might* be questioned by a reasonable, well-informed observer." *United States v. Herrera-Valdez*, 826 F.3d 912, 917 (7th Cir. 2016). For Barr to successfully seek Judge Norgle's recusal, he must "show an objective, disinterested observer fully informed of the reasons for seeking recusal would 'entertain a significant doubt that justice would be done in the case.'" *Simon*, 937 F.3d at 826 (quoting *Herrera-Valdez*, 826 F.3d at 917).

Barr believes the district court's conduct created an appearance of bias against him and his attorney. He argues the appearance of bias stems from his attorney's involvement in another case, *United States v. Mohsin*, 904 F.3d 580 (7th Cir. 2018). Barr's counsel appeared before Judge Norgle at least once during Mohsin's district court proceedings. Barr's counsel was then involved in Mohsin's appeal, which resulted in Mohsin's sentence being vacated and remanded for resentencing by a different district judge. *Id.* at 586.

Barr now claims that Judge Norgle's removal from the *Mohsin* case caused him to be hostile toward Barr's counsel. To show that Judge Norgle treated Barr's counsel less favorably than the Assistant United States Attorneys, Barr points to multiple interactions between Judge Norgle and Barr's counsel in this case. Those interactions follow a pattern: Barr's attorney interrupts Judge Norgle in an attempt to "create a record"; and then Barr's attorney and Judge Norgle go back and forth, exhibiting frustration with one another. Barr claims this shows that an objective observer would question Judge Norgle's impartiality.

We disagree. It is hard to see how a reasonable, well-informed observer would question Judge Norgle's impartiality because he had a sentencing decision overturned in a case involving Barr's attorney. The overturned sentence in Mohsin's case has nothing to do with Barr's sentencing hearing. Adopting Barr's reasoning would require us to believe that federal judges hold grudges against all attorneys who are involved in any case in which the district judge's decision gets reversed on appeal. And critically, it would also require us to believe that district judges respond to that grudge by demonstrating unfairness toward those attorneys and their clients. We will not assign such a petty disposition to federal judges. *See generally Code of Conduct for United States Judges* Canon 3, *available at* https://www.uscourts.gov/file/document/code-conduct-us-judges-effective-march-12-2019 ("A Judge Should Perform the Duties of the Office Fairly, Impartially and Diligently").

Simply put, Barr asks us to view this case through the lens of a "hypersensitive or unduly suspicious person" rather than a "well-informed, thoughtful observer." *In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990). We refuse to do so, and instead hold

that there was no reason for Judge Norgle to recuse himself under § 455(a). We now turn to Barr's claims of actual bias under § 455(b)(1).

*3. Section 455(b)(1)*

Section 455(b)(1) provides that a district judge shall recuse himself "[w]here he has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(b)(1). We review preserved § 455(b) claims *de novo*. *United States v. Dorsey*, 829 F.3d 831, 835 (7th Cir. 2016).

Under § 455(b)(1), we must determine whether a reasonable observer would conclude that the judge was biased. *See Hook v. McDade*, 89 F.3d 350, 355 (7th Cir. 1996). Bias must be proven by compelling evidence, and it must be grounded in some form of personal animus that the judge harbors against the litigant. *Grove Fresh Distribs., Inc. v. John Labatt, Ltd.*, 299 F.3d 635, 640 (7th Cir. 2002). But judicial rulings alone are almost never a valid basis for a recusal motion. *Liteky v. United States*, 510 U.S. 540, 555 (1994). In fact, "[a] judge's ordinary efforts at courtroom administration—even a *stern and short-tempered* judge's ordinary efforts at courtroom administration—remain immune" from charges of bias or prejudice. *Id.* at 556 (emphasis added). So, judicial remarks during a proceeding that are "critical or disapproving of, or even hostile to, counsel, the parties, or their cases" do not ordinarily establish bias, *id.* at 555, unless the judge's remarks reveal that the frustration originates from an extrajudicial source, *Grove Fresh Distribs.*, 299 F.3d at 640.

Barr reiterates that the district judge's bias here originates from Barr's counsel's involvement in *Mohsin*. And, like for his argument under § 455(a), Barr focuses on Judge Norgle's

conduct. This conduct includes repeatedly "interrupting," making comments about, and "raising his voice" to counsel, and "threatening consequences" if counsel "uttered particular words again." Barr reasons that this harsh treatment of his counsel evidences bias and prejudice.

Barr first fails to show that any of Judge Norgle's frustrations originated from an extrajudicial source. Judge Norgle stated he was "completely unaware of [Barr's counsel's] existence prior to his appearance in this case." And, more importantly, the source of Judge Norgle's frustration is clear from the record: Judge Norgle identified counsel's behavior as "repeated obfuscations and attempts to fence with the [c]ourt."

Nor does this conduct establish personal bias or prejudice under § 455(b)(1). Judge Norgle did interrupt Barr's counsel during his sentencing argument. And he also made comments to Barr's counsel, on a few occasions, that could be perceived as hostile. Yet, these comments were all made directly in response to arguments raised by Barr's counsel during the hearings. This is courtroom administration. And even if during Judge Norgle's efforts at courtroom administration he expressed dissatisfaction, annoyance, or even anger with Barr's counsel, that is still not a reason for Judge Norgle to recuse himself. *See Grove Fresh Distribs.*, 299 F.3d at 640.

Barr's argument about Judge Norgle's "threatened consequences" likewise lacks force. At the beginning of Barr's sentencing hearing, Judge Norgle instructed Barr's counsel that he would not be allowed to mention Barr's time in Saudi Arabia for any reason. But Barr's counsel struggled to follow this instruction. Judge Norgle's warnings and expressions of dissatisfaction with this disobedience "were in direct response to

[Barr's] repeated disregard" for the district court's prior instruction. *Id.* And "[e]ffective case management sometimes calls for such warnings to avoid … distraction from the principal issues." *In re City of Milwaukee*, 788 F.3d 717, 723 (7th Cir. 2015). In response to counsel's attempt to subvert a district court instruction, Judge Norgle's warnings—perceived by Barr as "threatened consequences"—were necessary to keep the sentencing hearing on track. This again is case management and does not warrant recusal.

In sum, Barr complains about the manner in which Judge Norgle managed his courtroom. But Barr has not shown that Judge Norgle's frustration originated from a source other than his own attorney's behavior during the hearings. And Judge Norgle's conduct does not "demonstrate evidence of personal animosity or malice, which is necessary to succeed on a Section 455(b)(1) motion." *Brokaw v. Mercer County*, 235 F.3d 1000, 1025 (7th Cir. 2000). Judge Norgle was thus not required to recuse himself under § 455(b)(1).

*4. Seeking Government Input*

Barr also argues that the district court erred by seeking the government's input regarding Barr's recusal motion. He believes that his motion should have been granted for this reason alone. The district court, citing *In re National Union Fire Insurance Co.*, 839 F.2d 1226 (7th Cir. 1988), rejected Barr's argument that seeking the government's input is a reason to summarily grant a motion for recusal. We review this legal conclusion *de novo. See Thomas v. General Motors Acceptance Corp.*, 288 F.3d 305, 307 (7th Cir. 2002).

Barr specifically relies on two sentences in *In re National Union Fire Insurance Co.*, 839 F.2d 1226 (7th Cir. 1988), for his

argument. First, we stated that "[j]udges should refrain from asking for the views of counsel on" questions of recusal. *Id.* at 1231. Second, in support of this statement, we quoted Resolution L of the 1971 Judicial Conference, which provides: "In all cases involving actual, potential, probable or *possible* conflicts of interests, a federal judge should reach his own determination as to whether he should recuse himself from a particular case, *without calling upon counsel* to express their views as to the desirability of his remaining in the case." *Id.* (quoting Resolution L, Judicial Conference of the United States, October, 1971). Barr believes these two sentences stand for the proposition that a judge must recuse himself if he allows the other party to respond to a motion for recusal.

However, Barr fails to acknowledge that we went on to hold that "[a]ny transgression against the policies underlying Resolution L is not itself a ground of disqualification." *Id.* A party may decline to provide input on the ground that it was "inappropriate for the court to solicit the parties' views" regarding recusal. *In re United States*, 572 F.3d 301, 307 (7th Cir. 2009). But a party's input is not an automatic ground for recusal. *See In re Nat'l Union Fire Ins. Co.*, 839 F.2d at 1231. Although we reiterate our admonition that a judge should not ask for the views of counsel on questions of recusal, the judge's doing so is not grounds for finding prejudice. Barr misreads *In re National Union Fire Insurance Co.*, and his argument, in the face of the facts in this case and the law, is without merit.

### III. CONCLUSION

Barr alleges a long list of errors and requests that we vacate his conviction and sentence or remand his case for resentencing by a different district judge. But we find no error in

the district court's handling of this case. We therefore AFFIRM Barr's conviction, sentence, and the district court's order denying Barr's motion for recusal.