NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 1, 2022[*]
Decided April 1, 2022

**Before**

DIANE S. SYKES, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 21-2930

| | |
|---|---|
| GLORIA E. SWANSON, <br> *Plaintiff-Appellant,* <br><br> *v.* <br><br> PNC BANK, NATIONAL ASSOCIATION, <br> *Defendant-Appellee.* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. <br><br> No. 20 C 6356 <br><br> Virginia M. Kendall, <br> *Judge.* |

**O R D E R**

When, despite Gloria Swanson's high credit score, PNC Bank, N.A., denied the joint application for a car loan that she submitted with her nephew, she sued the bank

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

for racial discrimination in violation of the Equal Credit Opportunity Act. *See* 15 U.S.C. § 1691(a)(1). The district court concluded that Swanson—who is Black—failed to state a plausible discrimination claim because no allegations suggested that PNC denied the loan because of her race or even knew her race. We affirm.

We relay the facts as Swanson alleged them in her complaint, drawing reasonable inferences in her favor. *See Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 512–13 (7th Cir. 2020). Swanson wanted to help her nephew buy a car from a Toyota dealership, so she co-signed his application for financing. The dealership's credit department offered a loan from Toyota Financial and also submitted the loan application to two outside lenders, one of which was PNC. Swanson and her nephew purchased the car that day with the loan from Toyota Financial.

A few days later, Swanson received a letter from PNC notifying her that her loan application was denied. PNC listed problems with her credit history, including delinquencies, a high ratio between the balance and limit on her other accounts, and the novelty of other credit accounts. The letter noted that Swanson's credit score was 787.

Swanson believed the letter inaccurately described her credit history, and so she contacted PNC. She was told that a letter denying a joint application lists problems with both applicants' credit histories. Swanson doubted this explanation because her letter did not contain her nephew's name. PNC followed up with a letter explaining that joint applicants receive copies of the same denial letter, and PNC assumes "each applicant will know whether the reason(s) are specific to them or the co-applicant."

Swanson sued the bank for racial discrimination under the Equal Credit Opportunity Act. *See* 15 U.S.C. § 1691(a)(1). She alleged that, given her high credit score and stable finances, PNC withheld credit only because she and her nephew listed home addresses with a zip code where a majority of the residents are Black.

On PNC's motion under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, the district judge dismissed Swanson's complaint without prejudice. The judge explained that Swanson failed to state a discrimination claim, first, because it was not plausible that PNC knew or could know that she is Black. The complaint stated that PNC "must have assumed" her race based on her zip code, but she did not allege "that PNC knew, or took steps to learn, that her zip code was in a predominately black area." Second, Swanson did not "meaningfully address PNC's explanation that the denial was based on a review of both her and her [nephew's] credit history."

Swanson amended her complaint, but her allegations remained substantially the same other than adding discussion of "redlining" (the historical practice of deeming a borrower a poor financial risk based on zip code). Swanson also alleged violations of the Due Process Clause and the Community Reinvestment Act, 12 U.S.C. § 2901.

PNC moved to dismiss the amended complaint, too. Shortly after filing her response, Swanson moved for the presiding judge to recuse herself before deciding the dismissal motion. As she had earlier in the lawsuit, Swanson accused the judge of "arbitrarily" dismissing a prior, unrelated, case of Swanson's and therefore harboring bias against her. Further, Swanson had filed a complaint of judicial misconduct after that case and now feared retaliation. She also cited a number of rescheduled status conferences as evidence that the judge was unwilling to give her case a fair hearing.

The judge denied the motion for recusal. She explained that she did not act improperly by dismissing Swanson's complaint in the previous case, a result this court upheld on appeal. *See Swanson v. Baker & McKenzie, LLP*, 682 F. App'x 490, 491 (7th Cir. 2017). The judge further explained that she continued the dates for many of Swanson's status hearings because she needed to make time for an ongoing jury trial and because of constraints created by the COVID-19 pandemic.

The judge then granted the motion to dismiss Swanson's amended complaint, this time with prejudice. The judge concluded that Swanson's new allegations of redlining did not make it more plausible that PNC had discriminated against her. And her due process claim failed because PNC, a private party, was not engaged in state action when denying her loan. Finally, the judge accepted Swanson's concession in her response brief that there was no private right of action under the Community Reinvestment Act. The judgment order stated that PNC could recover costs.

On appeal, Swanson generally challenges the dismissal of her amended complaint, asserting that she stated claims under multiple legal theories. Our review is de novo. *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 532–33 (7th Cir. 2011).

Swanson did not state a claim under the Equal Credit Opportunity Act, which prohibits creditors from discriminating "against any applicant, with respect to any aspect of a credit transaction … on the basis of race." 15 U.S.C. § 1691(a)(1). Despite the judge's directions in the order dismissing the first complaint, Swanson changed little in the amended complaint, which had two fatal flaws. First, no allegations permitted an inference that PNC knew her race when it denied the joint loan application it received from the dealership. Swanson argues that the inference is reasonable because PNC had access to her zip code, where 56% of the residents are Black. But PNC's ability to

investigate the demographic makeup of her zip code does not allow a reasonable inference that it did so, or, for that matter, that it assumed Swanson was among the 56%. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (plaintiff must do more than put "a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law").

Second, as the judge observed, even if PNC knew or assumed that Swanson is Black, nothing in the complaint supplied grounds for inferring that PNC might have treated her less favorably because of her race. *See Estate of Davis*, 633 F.3d at 538; 12 C.F.R. § 202.2(n) (defining discrimination under the Act as "treat[ing] an applicant less favorably than other applicants"). Critically, Swanson alleged that a PNC representative told her the loan was denied based on her and her nephew's credit histories. She has never acknowledged the import of this allegation, and although she does not have to overcome factual defenses at the pleading stage, she rendered her own claim less plausible by setting forth PNC's race-neutral reasoning without challenging it. She never alleged that the issues listed in the letter do not apply to her co-applicant. For that matter, though she alleges that she has sound credit—as her credit score reflects—she does not specifically assert that none of those issues could pertain to her. As one example, the letter states that the "[t]ime since most recent account opening is too short," which could easily refer to the loan Swanson had just obtained from Toyota Financial. Swanson's allegation of discriminatory motive rests on a chain of speculation. *See McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885–86 (7th Cir. 2012).

Swanson also did not state a due process claim. A "person" subject to suit under 42 U.S.C. § 1983 must be a government actor, or a private actor whose "seemingly private behavior reasonably may be treated as that of the state itself." *See Hallinan v. Fraternal Order of Police of Chicago Lodger No. 7*, 570 F.3d 811, 815–16 (7th Cir. 2009). PNC is not a government entity, and there is no reason to suspect that, contrary to the norm, the private bank engaged in state action when denying the loan. *See London v. RBS Citizens, N.A.*, 600 F.3d 742, 746–48 (7th Cir. 2010).

Finally, Swanson's attempt on appeal to resurrect her claim under the Community Reinvestment Act is frivolous. She conceded in her response to PNC's motion to dismiss her amended complaint that she "cannot make a claim to the CRA or have a right of action regarding PNC Bank's illegal and discriminatory practices." *See June Med. Servs. L. L. C. v. Russo*, 140 S. Ct. 2103, 2118 (2020) (concession constitutes waiver). Indeed, the statute does not provide a private right of action. *Hicks v. Resol. Tr. Corp.*, 970 F.2d 378, 382 (7th Cir. 1992). Therefore, dismissal of the claim was proper.

Swanson raises two other issues on appeal, neither of which has merit. First, she argues that the judge was biased and should have recused herself. *See* 28 U.S.C. § 455(a), (b)(1). To succeed, Swanson needed to demonstrate that a reasonable observer would conclude the judge was biased. *See United States v. Barr*, 960 F.3d 906, 920 (7th Cir. 2020). But she supplied no evidence of personal animus or retaliatory motive. *See id.* Judicial rulings (such as the dismissal of Swanson's prior case) are almost never grounds for recusal. *See Liteky v. United States*, 510 U.S. 540, 555 (1994). And the delayed hearings, which the judge satisfactorily explained, were not unique to Swanson. Further, Swanson's earlier misconduct complaint against the judge raises a possibility of retaliation, but there is no evidence that it manifested in this case. To the contrary, the judge acted patiently and impartially by explaining in detail how Swanson could improve her original complaint and by denying a motion for sanctions against her.

Second, Swanson purports to appeal the portion of judgment stating that PNC may recover costs. Rule 54(d)(1) of the Federal Rules of Civil Procedure presumes that the prevailing party recoups its costs, and Swanson identifies no reason why that presumption should not hold here. But PNC never filed a bill of costs, so Swanson owes nothing and therefore has no ground for appeal. *See Peck v. IMC Credit Servs.*, 960 F.3d 972, 974 (7th Cir. 2020); N.D. Ill. L. R. 54.1(a) (bill of costs must be filed within 30 days of entry of judgment or costs are waived).

One final issue remains: Swanson attached to her reply brief an appendix of evidence, none of which was submitted in the district court, that she believes supports her claims. PNC moved to strike this appendix. Because our decision addresses only the sufficiency of the amended complaint, the appendix is irrelevant, so we DENY PNC's motion as unnecessary.

AFFIRMED